48 27
47e 296

## KERAN COLGAN v. JOHN PELLENS.

A plaintiff in ejectment claimed under a title from an alleged heir-at-law of an ancestor who died seized in 1835, leaving no lineal descendants. His widow remained in possession after his death, and in 1836, on her petition asserting that her deceased husband left no heirs capable of inheriting, an act of the legislature was passed granting to her the

right of the state in the lands in fee. She continued in possession, married again, had issue by that marriage, and died about 1845, her issue having previously died. At the death of the ancestor the alleged heir was an infant, and he was still under age at the death of the widow. After her death her surviving husband continued in possession, taking all the rents for a period of more than twenty years after the alleged heir became of age. *Held*, that it was proper to permit the jury to determine whether the widow's possession, commenced at the death of the ancestor, became, after the petition and act of the legislature, adverse to the title of any heir-at-law, and whether the possession of her surviving husband after her death was, under a claim as tenant by curtesy to her or otherwise, adverse to the title of any heir-at-law.

In error to Hudson Circuit.

This was an action of ejectment for lands in Hoboken. Plaintiff claimed under Bernard Colgan, who purchased the lands in 1829, and died seized of them in 1835. He left Ann Colgan, his widow, but no issue. He left three brothers and one sister, all aliens. At Bernard's death, one of the brothers was married and had two sons, born in this state; one of them afterward died an infant, and without issue; the other, who was also named Bernard, died about 1875, aged about forty-four years, leaving no issue. After the death of Bernard the elder, the father of Bernard the younger had another son, named Andrew. The lands in question were conveyed to plaintiff by Andrew, and the widow of Bernard the younger released to plaintiff her rights therein.

These facts were shown by plaintiff at the trial. It also appeared that on March 8th, 1836, (*Pamph. L.* 1836, *p.* 320,) an act of the legislature was passed, which, after reciting in the preamble a petition of Ann, widow of Bernard Colgan, setting out that her deceased husband left no lawful heirs who could inherit his real estate, by reason of which it would escheat to the state, granted all the right of the state in such real estate to Ann Colgan, her heirs and assigns, with a proviso that nothing in the act should interfere with the lawful claims of any person to said lands except such as claimed under the state.

It further appeared that after her husband's death Ann Colgan remained in possession until her death, about 1845. During that time she married John Stanton, and had living issue by him, which issue did not survive her. After her death John Stanton remained in possession until his death, in 1877.

Defendant claimed under the heirs-at-law of Ann Colgan-Stanton, but also set up, to defeat plaintiff's recovery, a title acquired by adverse possession in Ann or John Stanton, or one of them.

Judgment was for defendant, and plaintiff now assigns for error, an admission of evidence against his objection, a refusal to charge according to his request, and the charge on the same subject.

Argued at November Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP and MAGIE.

For the plaintiff, *S. B. Ransom.*

For the defendant, *John C. Besson.*

The opinion of the court was delivered by

MAGIE, J. The exception relating to the alleged improper admission of evidence has not been pressed.

The sole contention has been that the court below erred in the charge and refusal to charge.

Plaintiff's case primarily involved the construction of section 12 of the " act directing the descent of real estates," (*Rev.,* p. 296,) which provides that in making title by descent, it shall be no bar to a party that any ancestor through whom he or she derives his or her descent from the intestate is or hath been an alien. He contends that by force of this section the real estate of Bernard Colgan the elder descended to his two nephews, John and Bernard the younger, children of his alien brother Thomas; that on John's death without issue, his share passed to Bernard the younger; and that on his death with-

out issue, the whole passed to his after-born brother, Andrew, subject to the dower of his widow.

The court below reserved the question so presented and directed the jury to determine whether, under the evidence, an adverse possession for twenty years had barred plaintiff's claim. Upon this direction the jury found for defendant, and the court properly directed judgment to be entered in his favor; for whether plaintiff's claim was sustainable in a legal point of view, became obviously immaterial when it was determined that if he had acquired the title he claimed, he was barred from its assertion.

The question presented by the exceptions is whether there was error in the instructions or refusal to instruct on the subject of adverse possession in the respect excepted to. The exceptions cover instructions, which, in substance, required the jury to determine whether the possession of John Stanton was, as to plaintiff and those under whom he claims, an adverse possession.

The possession of Ann Colgan-Stanton commenced during the infancy of Bernard Colgan the younger, and terminated at her death, which occurred before he arrived at full age. The statute did not therefore run in her favor against him.

But the possession of John Stanton, though commenced in the minority of Bernard the younger, continued for over twenty years after he arrived at full age. The court below therefore properly treated the case in this aspect as dependent on the nature of John Stanton's possession.

Since, however, Ann Colgan-Stanton died in possession, and John, her husband, continued that possession, living issue having been born to them during marriage, an inference was possible that his possession was as tenant by the curtesy or under a claim of such a right. In this mode it is insisted that the nature of Ann's possession is incidentally drawn in question.

Ann's possession immediately succeeding the death of Bernard Colgan the elder, is plainly referable to her right as dowress. In the absence of any circumstance indicative of a

change in the nature of her possession, it must be considered to have continued as begun. But undoubtedly she could disavow and disclaim her rights as dowress and acquire and assert other rights. If her claim of other rights was open, notorious and clearly proved, then it would tend to characterize her possession and might render it adverse to those whose interests were affected by the claim.

The circumstance that upon Ann's petition asserting the non-existence of lawful heirs of her husband, the state, by a private act, granted to her in fee all the state's right in this land, tended to characterize her possession thereafter. The grant was open and notorious. It was held by this court to have passed the state's title, if it had any, without inquest of office found. *Colgan* v. *McKeon*, 4 *Zab.* 566. While the act could not divest a lawful heir of his title, it could give color of title to Ann, for it was based on the assertion of facts which made it good.

But it is urged that the grant was procured by fraud, and therefore no color of title was obtained by it, on the doctrines established in *Foulke* v. *Bond*, 12 *Vroom* 527, and *Den* v. *Hunt*, *Spenc.* 487. The fraud insisted on is the statement of Ann's petition, that her deceased husband had no lawful heirs to whom his real estate would descend, when in fact she knew of the existence of the two nephews who are now claimed to have taken the title by descent. But the fraud which deprives a grant of the power to give color of title must be actual fraud. The assertion of the petition does not necessarily evince such fraud. The statement was not that deceased left no nephews in existence, but no heirs capable of inheriting this real estate. It is not an assertion of fact, but rather of a legal conclusion, and error therein would not necessarily require an inference of fraud. The act, which is now section 12 of the Descent act, and relied on to sustain the nephews' right by descent, had been passed only the year before, (*Pamph. L.* 1835, *p.* 67,) and had not then, nor has it since, been construed by our courts.

It is further insisted that the act gave no color of title,

because it excepted the rights of lawful heirs. But the act was applied for and the grant made on the assertion that there were no lawful heirs. If, therefore, possession was taken under it, the acceptance of the grant was an open disclaimer of any right in any heir. And if there was such a disclaimer of the heirs' rights, it was immaterial whether the grant gave color of title or not.

For these reasons I think that if Ann's possession had run against Bernard the younger, it would have been proper to have left to the jury to determine from the circumstances the nature of that possession after her petition and the act of the legislature passed thereon, and whether that possession was continued as dowress or under a claim of title adverse to any heir-at-law.

As John Stanton's possession was capable of being referred to a claim of right by curtesy, it becomes a question whether the character of her previous possession, which had not run against the person now claimed to be the heir, could be continued by him. It is well settled that adverse possession must be continuous, and its continuity must be in the same right. The successive possessors, in order to count the previous possession in making up the statutory time, must be in privity with each other, a privity either of contract, blood or estate. *Tyler on Ejectment, &c.,* 912. It was held in Massachusetts that a wife had no such privity with her husband as to entitle her to unite her possession after his death to the possession of her husband before death. *Sawyer* v. *Kendall,* 10 *Cush.* 241. But the conclusion was expressly put on the common law rule that a wife had no title, seizin or right of entry as dowress until the assignment of dower. Whether such a result would follow in respect to lands in this state, in which the wife has by statute a right, which has been declared to be a freehold for life, (*Ackerman* v. *Shelp,* 3 *Halst.* 125,) until assignment of dower, need not be determined. But the estate by curtesy before 1845 was initiate on the birth of a possible heir-at-law, and was a mere continuation of the wife's estate, and of the nature of an estate by descent rather than

Coglan v. Pellens.

purchase. 1 *Washb. Real Prop.* 135. A privity of estate therefore existed, and the after possession of John, if by curtesy, continued Ann's rights, as well for his own benefit as for those who, as reversioners, became entitled to her rights at her death. In this aspect of the case the court below did not err in permitting the jury to determine whether or not his possession was by claim of right as tenant by curtesy.

Nor do I think this instruction erroneous, if it be considered as disconnected from the possession of Ann and directed entirely to the possession of John Stanton. He remained in possession after Ann's death for a long period. The circumstances were such that if she had acquired any title, he could claim as tenant by curtesy. If she had acquired no rights, he had none. Yet during this long period he was in open, notorious possession, taking the rents and exercising every act of ownership. From this evidence adverse possession could be inferred, and it was no error to permit the jury to say that if his possession was under the claim of a right as tenant by curtesy to Ann, it was adverse, and would bar plaintiff's claim. On the other hand, if he did not thus claim, but did claim ownership in the modes above indicated, his possession was equally adverse.

In this view I think the court below might have directed a verdict for defendant, and that such instruction would not have been objectionable.

What has been said disposes also of the objection made to the refusal to charge respecting John's possession in the manner requested by plaintiff.

The judgment should be affirmed.