AGNES JONES (nee Perley), EDITH PERLEY and KATH-
ERINE PERLEY, a minor, by her next friend and guar-
dian ad litem, J. F. COLBURN, *v.* HANA LILI POO-
LOA (formerly Hana Lili Gravier), LEE CHU and LAU
PIO.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 12, 1899.    DECIDED APRIL 11, 1899.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE PERRY, IN PLACE
OF FREAR, J., ABSENT.

A widow dowress whose husband died in 1849 before the enactment
of the statute of 1852 which gives a widow the right to occupy
with the heirs of the deceased her husband's lands after his death
so long as the heirs do not object thereto, taking possession of
land previously leased by the guardian of the heir, in which lease
the widow joined for her right of dower, has no fiduciary relation
to the heir. She is not a tenant in common with the heir, there-
fore, no actual ouster need be proven. If her occupancy satisfies
all the necessary elements of a title by adverse possession she
cannot be disturbed.

OPINION OF THE COURT BY JUDD, C.J.

This is an action of ejectment to obtain possession of certain
land on King street, Honolulu, awarded to one Louis Gravier
by Land Commission Award No. 689. The principal plaintiffs
are the grandchildren of the said Gravier, who died in Hono-
lulu in 1849, their mother being one Elizabeth Gravier, daugh-
ter of said Louis Gravier who afterwards married one Perley.
Elizabeth was sent to the United States by her guardian when

she was seven years old, lived in Massachusetts, married there, had children, Agnes, Edith, and Katherine (plaintiffs) and died intestate in West Boxford, Mass., in the year 1884, having never returned to the land of her birth.

Elizabeth's probate guardian, Stephen Reynolds, on the 14th September, 1850, executed for his ward Elizabeth, a lease of the premises in dispute to one Brandon for the term of ten years. Louis Gravier left a widow, Hana, called also Lili, who afterwards married one William Gill and on his decease one Pooloa. She has been in possession of the entire premises from 1860 to the present time. In the lease by the guardian of her daughter Elizabeth this widow joined for her right of dower, and the lease expressly gives boundaries which exclude a portion of the original award as being the "widow's reservation." During the term of this lease the widow (defendant) collected rents from some natives living, presumably, on the reserved portion of the lot; the rents reserved under the lease were collected by the respective guardians of Elizabeth and a portion paid by them to the widow. After the lease had expired Hana (defendant) extended her possession over the entire lot without objection or interference by any one, leased portions of it from time to time, taking the rents and devoting them to her own use, paid the taxes and continued to live upon a portion. Her possession was continuous and notorious. One lease (recorded) was for twelve years; others are for shorter periods. Her defense to this suit was title by prescription. The trial judge charged the jury *inter alia* that the plaintiffs had the paper title to the land and he left the issue raised by the defendant to the jury under certain instructions which were excepted to by plaintiffs and refused certain instructions asked for by them, also excepted to. Following are the instructions refused:

1. That a widow occupies a fiduciary relation to the heirs of her deceased husband and cannot acquire a title against them for her individual benefit.

3. That to give the possession of the defendant a hostile or adverse character she must prove a distinct ouster of plaintiffs or their mother.

4. To support an ouster defendant must also show notice to plaintiffs or their mother of a denial of their title and the commencement of an adverse holding.

5. To support the claim of title by adverse possession defendant must show a continuous occupation for twenty years after such ouster.

6. Ouster cannot be presumed from possession and receipt of rents and profits alone. The presumption is that such acts are in subordination to the legal title; and to cause them to have a hostile character they must be accompanied by affirmative proof brought home to the other parties (the plaintiffs in this case) that such acts were intended to be hostile.

7. That the leases made by defendant under the name of Lili and so recorded, defendant being at the time the wife of one Pooloa and her full name being Hana Lili Pooloa, do not constitute constructive notice of the fact that such leases were made and furnish no notice of ouster.

The first instruction refused raises the question whether a widow occupying land of her husband who died before the statute of descent of 1850 occupies a fiduciary relation to the heirs and cannot acquire a title against them for herself. This question of law was decided adversely to the present plaintiffs' contention in the case of *Paulo v. D. Malo,* 4 Haw. 536. This court said the question is "whether the occupation of the estate by the widow suspended the operation of the statute of limitations until her death." By the statute of 1846, p. 59, a widow had a right of dower in her husband's land, but the statute does not in terms allow her possession of the estate. * * * "In analogy to the common law and the decisions of other countries we hold that a widow cannot enter the land until her dower is assigned because before assignment it is not known what part she shall have for her dower." "She is not a tenant in common with the heir; her right rests in action. * * * * "The occupation of a widow then, in 1849, before the statute of descent was passed, was not necessarily as dowress, and might be adverse to the heirs; and the question as to whether her

possession was adverse or not should have been left to the jury." In the case at bar Louis Gravier, the husband, died in 1849; the law quoted from the statutes of 1846 which were in force at the time of his death governed the descent of the property. The record does not show any assignment of dower of land to the widow in the land in question of her husband. During the existence of the lease she was not in actual possession of the land demised, being the main portion of her late husband's land, her possession being confined to the "widow's reserved portion." We cannot find any fiduciary relation existing between her and her daughter Elizabeth as regards this land. The statute did not allow "possession of the land by her and her children or the heirs of the deceased," &c., as is now the law by Sec. 1305 of the Compiled Laws. In such a case there would be a fiduciary relation. This was so by statute of N. Y. in *Knolls v. Barnhart*, 71 N. Y. 474, relied upon by plaintiffs, where the possession by the widow of an intestate as dowress and as guardian in socage of minor heirs is as tenant in common with all the heirs, and therefore prevents her from acquiring an outstanding title in the land for her individual benefit. This case has no applicability to the one at bar. Here the widow was not a guardian in socage or the probate guardian of her daughter Elizabeth, but she, Elizabeth, had been sent to another country by her guardian, Reynolds, who was appointed by the Court. By the law of New York the authority of a guardian in socage would cease at any rate when a general guardian should be appointed. She has released her right of dower in the demised premises; whether this would estop her from asking her dower to be assigned during the term is doubtful, but this question is not in issue. But it did, as charged by the court below, have the effect to estop her from claiming that her possession of the portion occupied then, was hostile. The way was certainly clear for the widow, after the lease had expired, to take possession of the demised estate and hold it as any stranger might have done, and the statute of limitations would then begin to run. Her possession, if it was adverse or hostile to the true owner and was continuous for twenty years

and was actual, that is, visible and notorious, so that the true owner would have actual or constructive notice of the possession, would ripen into a title which could not be disturbed. That defendant's possession was actual and continuous for nearly forty years was not questioned. But plaintiffs claim that it was not hostile and no "ouster" is shown. The charge of the court that she must show a change in the character of her possession was even more favorable to the plaintiff than we consider necessary. For she had possession during the continuance of the lease only of what is called in the lease the "portion reserved for the widow" or "by the widow" and it is only as to that portion that she must show a change of possession. As the widow and the heirs were not tenants in common there need be no ouster in order to set the statute of limitations in motion. The circumstances of the case properly required the following charge of the court, "It is not necessary that a person claiming the land by adverse possession specifically inform the true owner that he is so claiming adversely. It is enough if the acts and doings of the person in possession are of such a nature as to clearly indicate that she is claiming in a hostile manner."

The plaintiffs moved to set aside the verdict as being contrary to the evidence and the weight of evidence. Without reviewing it in detail, we hold that the following evidence did tend to show that she was claiming the land as her own. The widow lived upon the land and, in 1869, made a lease of a portion of the land for 12 years, and again in 1878 a lease of a portion for 15 years. The first mentioned leases were witnessed by persons who were respectively agents at the dates thereof of Elizabeth and who managed and sold her lands in Honolulu held in her own right by Land Commission Awards in her own name. J. W. Austin, deceased, was agent until 1879, when S. B. Dole received a power of attorney from Elizabeth Perley and her husband. The jury might infer that this was evidence of notice to their principal, Elizabeth, of the adverse possession of her mother. The leases were recorded in the Registry which is constructive notice and the identity of the land with that inherited by Elizabeth should put her

upon inquiry, whether she was familiar with her mother's name "Lili" or not. If the defendants did not claim title adversely until her first lease of the premises in 1869, thirty years have elapsed since then. This and other evidence of her claiming the land as her own went to the jury under proper instructions and we cannot disturb their verdict upon any principle of law controlling such cases. There was evidence to support the verdict.

Exceptions overruled.

*C. Brown* and *F. M. Hatch* for plaintiffs.

*J. A. Magoon* and *R. D. Silliman,* and *Humphreys & Gear* for defendants.