UNDERGROUND ELECTRIC RYS. CO. OF LONDON, Limited, v.
OWSLEY et al.

(Circuit Court of Appeals, Second Circuit. April 9, 1912.)

No. 193.

1. DOWER (§ 55*)—CONTINGENCY—ASSIGNMENT.

On the death of a husband, the widow's right of dower ceases to be contingent and becomes consummate, but it still remains a mere right in the nature of a chose in action until assigned.

[Ed. Note.—For other cases, see Dower, Cent. Dig. § 176; Dec. Dig. § 55.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Dower (§ 84*)—Assignment—Deduction of Taxes.

Under New York Real Property Law (Consol. Laws 1909, c. 50) § 190, providing that a widow shall be endowed of the third part of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage, a widow was not chargeable with any part of unpaid taxes assessed against the land during the husband's lifetime, or after his death, but before assignment of dower.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 322–324; Dec. Dig. § 84.*]

3. Dower (§ 85*)—Settlement Agreement—Effect.

Where a settlement agreement with a widow as to dower in her husband's real property provided that the dower should be valued as of the date of admeasurement, and such date was subsequent to the creation of a lien on the property for taxes in favor of the city, such agreement merely secured to the widow the right to share in any increase in the value of the property after her husband's death, and, as between the parties, did not make a claim for moneys paid to discharge tax liens a charge against the widow's share.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 325, 326; Dec. Dig. § 85.*]

4. Dower (§ 114*)—Deductions—Taxes—Occupation by Widow.

Where a dower settlement agreement provided that the widow should occupy the premises without rent or other charge therefor for any period since the death of her husband, such provision absolved her from any obligation to pay taxes assessed against the property if she would have been otherwise chargeable therewith.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 367–373, 376, 377; Dec. Dig. § 114.*]

5. Dower (§ 84*)—Property Subject—Liens—Mortgage for Purchase Price —Effect.

Where a husband died leaving certain real property which was subject to a purchase-money mortgage, authorizing the mortgagee to pay taxes and assessments in case of the mortgagor's default, and making the mortgagor's obligation to repay the same a lien secured by the mortgage, and taxes were so paid by the mortgagee, the amount of the mortgage and taxes so paid should be deducted from the proceeds of a sale of the property in determining the value of the widow's dower in the property under New York Real Property Law, § 193, providing that a widow is not entitled to dower in lands mortgaged to secure purchase money as against the mortgagee, or those claiming under him, but is entitled to dower in such lands as against every other person.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 322–324; Dec. Dig. § 84.*

What estate subject to dower, see note to Black v. Elkhorn Min. Co., 3 C. C. A. 316.]

Appeal from the District Court of the United States for the Southern District of New York.

Action by the Underground Electric Railways Company of London, Limited, against Louis S. Owsley, as executor, etc., of Charles T. Yerkes, Charles Sims, and others, as executors of Mary Adelaide Yerkes, and Charles E. Yerkes and others. From a decree dividing a certain fund reserved under a prior decree (190 Fed. 679), Sims and others and Owsley prosecute cross-appeals.    Modified and affirmed.

Cross-appeals by Charles Sims and others, as executors of the will of Mary Adelaide Yerkes, deceased, and by Louis S. Owsley, as executor of the will of Charles T. Yerkes, deceased, from a decree of the Circuit Court, Southern District of New York, entered November 11, 1911, dividing a certain fund reserved under a prior decree of said court in said cause.

In April, 1909, the Underground Electric Railways Company, a creditor of the estate of Charles T. Yerkes, filed a bill in the Circuit Court praying, among other things, for the appointment of a receiver to take possession of certain real and personal property of said estate situated in the city of New York, and a receiver was duly appointed. The opinion of the Circuit Court, with respect to the appointment of a receiver, is reported in 169 Fed. 671, and that of this court in affirmance in 176 Fed. 26, 99 C. C. A. 500.

At the time of the appointment of the receiver the property was in the possession of Mary Adelaide Yerkes, widow of Charles T. Yerkes, who claimed to own the greater part of it, both the real and personal.

In January, 1910, a decree was entered by the Circuit Court in said cause directing, among other things, the sale by the receiver of the real estate aforesaid and the payment to said widow of the cash value of her dower interest therein, in accordance with the provisions of a settlement agreement theretofore entered into by the parties in interest. This agreement provided that the widow should waive any claim of ownership and should receive the cash value of her dower in the real estate in question estimated under a rule of the Supreme Court of New York. This amounted to 20.18 per cent. of the cash value of the real estate. The widow had also waived the provisions of the will of her husband giving her the life use in certain of the New York real estate.

The settlement agreement further provided that during the pendency of the receivership cause and until a sale thereof, the widow should continue to occupy the real estate "without rent or other charge therefor for any period since the death of said Charles T. Yerkes."

The taxes assessed against said real estate during the lifetime of Charles T. Yerkes, and which were unpaid at his decease, amounted with interest to $81,266.08. The taxes assessed against said real estate after the death of Charles T. Yerkes and down to the time of the sale of the same in pursuance of said decree of January, 1910, amounted, with interest, to $110,113.49.

The parties in interest were unable to agree whether any or all of said unpaid taxes should be deducted from the sale price of said real estate before estimating the cash value of the widow's dower under the settlement and, consequently, said decree of January, 1910, provided that the incumbrances, including taxes, should be paid by the receiver and that after payment of 20.18 per cent. of the residue to the widow there should be reserved a "further sum of 20.18 per cent. of the amount paid for taxes on said property, it being left to the further determination and order of this court what portion thereof, if any, is payable to the widow in settlement of her dower in said property."

In accordance with the foregoing provision the sum of $38,620.40 was reserved by the receiver from the proceeds of the sale and such sum is now in his hands.

The Circuit Court ruled that the taxes which had accumulated during the life of said Charles T. Yerkes were to be disregarded in estimating the cash value of the widow's dower and, consequently, that the amount reserved as against the payment of such taxes should be paid over to the executors of the widow (she having died during the pendency of the proceedings), but that the taxes which had accumulated after the death of the husband were to be treated as liens upon the real estate superior to the dower and that the amount reserved against such taxes should be paid over to the executor of the husband.

The executor of the husband's estate and the executors of the widow's estate have taken cross-appeals to this court.

Kearny & Dickinson (Carroll G. Walter, of counsel), for Sims et al.
W. Orison Underwood and Joline, Larkin & Rathbone (Arthur H. Van Brunt, of counsel), for Owsley.

Before COXE and NOYES, Circuit Judges, and HOLT, District Judge.

NOYES, Circuit Judge (after stating the facts as above). The widow was entitled to dower. Both the settlement agreement and the decree recognized her right. The former stated that it existed and provided for the sale of the lands so that she should "receive the cash value of her dower." The latter provided for payments to the widow out of the proceeds of the sale "for her dower." The case is one of dower and nothing else. The inquiry is whether the widow took her share free from, or burdened with, unpaid taxes.

Lord Bacon said as early as 1641[1] that it was then "the common by-word in the law that the law favoured three things: 1. Life, 2. Liberty, 3. Dower" (Bacon on Uses, p. 37). The Year Books and other early reports show the vigilance of the courts in watching over widows' interests. And from those times to these the right of dower has always been highly esteemed in the law. We must start with the proposition that the law will not favor deductions from the widow's thirds.

[1] Upon the death of the husband the widow's right of dower in his realty becomes consummate. It has ceased to be a contingency. But still it remains a mere right in the nature of a chose in action. The widow has the right to have a freehold estate assigned to her, but she has no estate until it is assigned.

Presumably the tenant of the freehold is bound to pay the taxes until he assigns the dower. Heirs and devisees have the vested, existing estate. The widow, before dower assignment, is without estate. The law must be clear to prefer heirs or devisees to the widow and to charge a tax on real estate upon her mere right of action. And if an heir or devisee will not be preferred, a creditor or a representative of creditors will stand in no better position. The claims of creditors, heirs, devisees and legatees are subordinate to the widow's right of dower and, with respect to it, they all stand upon the same plane.

We must, then, regard as settled as preliminary principles that the law will not look with favor upon deductions from the widow's dower and that, before assignment, a widow has no interest to be taxed as an estate in the lands. And so we recur to the inquiry whether this widow was properly burdened with any of these taxes which all accrued before her dower was assigned. Stated more precisely, the question is whether under the laws of New York, in awarding to a widow a share of the proceeds of real estate in lieu of dower therein, unpaid taxes upon such real estate should first be deducted, or whether such share should be in the proceeds without deduction. But it must be observed that this inquiry does not involve any right of state or municipality, because the taxes have been paid. It is altogether between the widow and the other persons entitled to share in her husband's estate.

---

[1] The first edition of Bacon on Uses was published fifteen years after the death of Lord Bacon.

[2] The right of dower in this state is fixed by statute which provides (New York Real Property Law, § 190):

"A widow shall be endowed of the third part of all the lands whereof her husband was seized of an estate of inheritance at any 'time during the marriage."

This was the right which—as we have seen—the agreement and the decree recognized, and it was not changed in its essential nature by the provision for dividing the proceeds of the real estate instead of the real estate itself. If the widow were entitled to a third part of the lands and were not chargeable—as between the parties interested in the estate—with unpaid taxes, she was entitled to her agreed dower share in the proceeds of the real estate without deduction on account of such taxes.

Now, there is nothing in the language of the statute to indicate that a widow's right of dower is subject to any deductions whatsoever, and the underlying principles which we have examined tend to the conclusion that it is not so subject. If, in addition, we find the authorities in the state of New York, as well as those elsewhere, pointing in the same direction, there will be little difficulty in disposing of the case.

In Harrison v. Peck, 56 Barb. (N. Y.) 251 (decided in 1870) the question was very similar to that arising here. In that case the contest was between a devisee and a doweress; the inquiry was whether the latter was bound to pay the taxes which had accrued upon the land assigned to her as dower before such assignment was made and embracing taxes assessed both before and after the death of the husband. The New York Supreme Court held that the widow was not bound to pay the taxes, and after quoting the dower statutes said:

"There is no qualification or condition in this section and the sections of the statute relating to it and the admeasurement of dower indicates a clear intention of the Legislature that, as between the widow and the heir or devisee, this provision shall be enforced unburthened, if that may be, except from the time an assignment of the dower has been made."

In Taylor v. Bentley, 3 Redf. Sur. 34, 41 (decided by the New York Surrogate's Court in 1877), the decision in Harrison v. Peck, supra, was followed.

In Smith v. Cornell, 51 N. Y. Super. Ct. 354 (decided by the New York Superior Court in 1885), the court said:

"The dower interest was in law not subject to be applied to payment of any part of the taxes." Citing Harrison v. Peck, supra.

In Vanderbeck v. City of Rochester, 122 N. Y. 285, 25 N. E. 408 (1890) the Court of Appeals, in considering whether an assessment paid by a wife upon land belonging to her husband, could be recovered, said, in holding that the payment was voluntary:

"The only interest she had in the lands was that of dower. And that interest was not in jeopardy, because, first, no steps had been taken by the respondent looking to the sale of the land and, second, as widow she was entitled to have her dower assigned to her unburthened with taxes and assessments payable out of her husband's estate." Citing Harrison v. Peck, supra.

The conclusions reached by the New York courts are those reached generally by the courts in this country.

Thus in Graves v. Cochran, 68 Mo. 74, the Supreme Court of Missouri said that a dower interest was not "to be diminished by the taxes, or any portion of the taxes assessed against the land, either in her husband's lifetime or in her quarantine."

In Branson v. Yancy, 16 N. C. 77, it was held that a widow who, after the death of her husband, occupies his residence, is under no obligation to pay the taxes accruing thereon between his death and the assignment of dower.

In Blodgett v. Brent, 3 Cranch, C. C. 394, Fed. Cas. No. 1,553, it was held that a widow has no right to pay taxes assessed upon her husband's lands before the assignment of dower. The court said:

"Before assignment of dower the widow has no right to pay the taxes or redeem. She looks to the tenant of the freehold, whoever he may be, and he is bound to pay the taxes until he assigns her dower."

In Felch v. Finch, 52 Iowa, 563, 3 N. W. 570, it was held that a widow was under no obligation to pay any portion of the taxes levied on the lands of her deceased husband before her dower had been assigned. And see Jonas v. Hunt, 40 N. J. Eq. 660, 5 Atl. 148; Spinning v. Spinning, 41 N. J. Eq. 427, 5 Atl. 278.

The rule thus well established by the authorities in this state and elsewhere that a widow is under no obligation to pay taxes assessed against her husband's realty before the assignment of dower, seems decisive of the present case. The taxes in question were assessed before the dower was assigned and, consequently, unless we find some special considerations controlling this case, no other conclusion is possible than that it was improper to hold back anything from the widow's share on account of taxes.

There is no distinction going to the result between the taxes assessed during the husband's lifetime and those assessed after his death but before the assignment of dower. In neither case was there any obligation to pay upon the part of the widow and that is the question here. It is immaterial that as between executor and devisees or heirs, the statutes may specifically impose a duty in one case and not in the other. Such statutes, by requiring the payment of taxes assessed during a decedent's lifetime out of personalty, may constitute an additional reason why such taxes should not be charged against the widow, but do not weaken her contention, upon the principles stated, that she is under no obligation to pay taxes accruing between the husband's death and the assignment of dower.

[3] Some stress is laid in the opinion of the Circuit Court upon the provision in the settlement agreement that the dower should be valued as of the date of admeasurement which was after a lien for the taxes had come into existence in favor of the municipality. We think, however, that this provision merely gave the widow the right—which she would probably have had without it—to share in any increase in the value of the property after the husband's death. But it did not make—as between the persons interested in the estate—a claim for moneys paid to discharge the tax liens a charge against the

widow's share. A provision for valuing property at a particular time has no especial bearing upon the question whether discharged municipal liens can be treated as existing against the right of dower. It does not follow that liens which exist in favor of the municipality create, when they are paid off, any charge in favor of or against other interests.

It must be distinctly borne in mind that the parties did not agree that the widow should receive a stated percentage of the husband's estate subject to liens existing at a particular time. As already pointed out, they 'agreed that she should have dower which carried with it the rights and obligations attaching to dower. The right became consummate upon the husband's death. She had the right to share in the property then existing which was in no way limited by the agreement that it should be valued as of the date when admeasured.

[4] The contention is made by the executor of the husband's estate, that it is "equitable" that, as this widow had the use of the real estate after the husband's death and before the assignment of dower, she should bear her share of the taxes assessed during such time. It would, perhaps, be a sufficient answer to this contention to say that the widow was entitled to dower as a matter of law and that the amount of dower is determinable by law, and not by equitable considerations. Let us assume, however, that the amount of dower may depend upon equities and that a widow who occupies lands of her husband's estate before assignment of dower should, as a matter of justice, pay the taxes assessed against such lands during her occupancy. Such obligation, if it exist, is obviously based upon those principles of fair dealing which would require the payment of compensation for value received. But if a widow relinquishes claims to the ownership of lands and thereupon it is agreed that her occupancy thereof before assignment of dower shall be without charge to her, there is no more reason why she should pay the taxes assessed against the premises than that she should pay rent or any other consideration for the use. And we think that is substantially what was done in his case. The settlement agreement provided, as we have seen, that the widow should occupy the premises "without rent or other charge therefor for any period since the death of said Charles T. Yerkes." We fail to see how language could be better framed to absolve the widow from any obligation to meet the taxes or any other charge. In view of this provision the widow's right of dower was unaffected by the fact of her occupancy. In view of this provision also the question whether, in case the widow occupied for a time as life tenant under the will and subsequently renounced the will, she would be liable for use and occupation, is unimportant. Any such liability was discharged in the settlement agreement and affords no basis for a diminution of dower.

[5] We have thus far considered the case as relating to lands to which the general dower statute is applicable. It appears, however, that a portion of the real estate was subject to a mortgage executed by the husband, Charles T. Yerkes, to the grantor for unpaid pur-

chase money. This purchase-money mortgage contained a provision authorizing, upon default, the mortgagee to pay taxes and assessments and providing that the obligation to repay the same should constitute a lien upon the premises and be secured by the mortgage. The mortgagee in fact paid $35,574.66 for taxes and, in accordance with an express provision of the decree of January, 1910, such amount with interest was repaid by the receiver as a part of the mortgage debt.

This land, subject to the purchase-money mortgage, stood, with respect to dower, in a position very different from the other lands of the husband's estate. A purchase-money mortgage is always superior to the wife's right of dower. Indeed, it is generally stated that a purchaser who executes a mortgage for the purchase money acquires no such seizin, as against the holder of the mortgage, as will entitle his widow to dower. And this is substantially that which is provided by statutory enactment in New York. There is a statute here which particularly relates to dower in lands mortgaged for purchase money and which provides, in substance, that a widow is not entitled to dower in such lands "as against the mortgagee or those claiming under him," but is entitled to dower in such lands as against every other person. New York Real Property Law, § 193.

Under this statute the only dower interest which this widow obtained in the land mortgaged for the purchase money, was in the equity of redemption. The lien of the mortgage was paramount to the dower, and we think it the better view that the amounts paid for taxes secured by the mortgage were paramount also. The statute says, in effect, that a purchase-money mortgage takes precedence of dower and we perceive no ground upon which a distinction can be drawn between the demand for the purchase money itself which is secured by the mortgage and the demand for the incident thereto—the amount paid for taxes to protect the mortgage debt—which was likewise secured by the mortgage.

Of course it does not necessarily follow from the fact that the mortgagee's right to reimbursement for taxes paid was paramount to dower, that the amount paid to the mortgagee must be charged against the dower interest in favor of heir, devisee or creditor. If the persons interested in the estate owed the widow an obligation to keep down the amount secured by the purchase-money mortgage, there would be ground for claiming that her dower in the equity of redemption should not be diminished by the taxes. But no such obligation is pointed out to us. Indeed it is held in the State of New York, with respect to mortgages in general, that a husband owes the wife "no duty enforced in law or equity to pay mortgages to relieve her dower." Dunherr v. Rau, 135 N. Y. 219, 222, 32 N. E. 49, 50. See, also, Hawley v. Bradford, 9 Paige, 200, 37 Am. Dec. 390.

Upon the whole we think it the better view that the widow was entitled to dower in the proceeds of this particular land only to the extent that the sale price thereof exceeded the amount paid to the mortgagee for the mortgage debt and for reimbursement of taxes paid. In other words, the widow's estate is not entitled to the moneys reserved as representing a percentage of the taxes paid to the holder of the purchase-money mortgage.

The decree appealed from must be modified—but without costs—so as to provide that the entire amount in the hands of the receiver, with the exception stated in the preceding paragraph, shall be paid to the executors of the will of the widow, Mary Adelaide Yerkes, and that the remainder only shall be paid to the executors of the will of the husband, Charles T. Yerkes. And it is so ordered.