Submitted on briefs at Pendleton October 26, reversed December 30, 1925, rehearing denied February 2, 1926.

# THE CALVARY BAPTIST CHURCH *v.* MARY E. SAXTON ET AL.

### (242 Pac. 616.)

**Adverse Possession—Tax Title to Widow for Taxes Accruing Prior to Assignment of Dower Held Color of Title.**

1.   Where, under 2 Hill's Ann. Laws of 1892, Section 2783, and Section 2846 (now § 4313, Or. L.), taxes on decedent's estate accrued prior to assignment of dower to his widow, under 2 Hill's Ann. Laws of 1892, Section 2954 (now § 10053, Or. L.), purchase of tax title by widow *held* color of title on which to base adverse possession; she being not obligated to pay taxes prior to assignment of dower.

**Adverse Possession—Of Widow Under Tax Title Held Shown.**

2.   In claim, by widow, of title to portion of deceased husband's land by adverse possession under a tax title for taxes accruing prior to assignment to her of dower in land claimed, recording of tax title, together with actual notice of claim of adverse possession, which had continued for more than statutory period, to the trustees and representatives of church claiming the title, *held* to show title by adverse possession.

**Adverse Possession—Recording Certificate of Sale and Tax Deed is Constructive Notice.**

3.   As respects the question of change of possession in recognition of other title to adverse possession, the recording of a certificate of sale and tax deed is constructive notice, and has same effect as actual notice when followed by open, continuous possession under claim and color of title.

**Dower—Nature of Dower Estate Defined—Statutory Provisions Governing Contractual Relations Pertaining to Taxes Do not Apply to Dower Right.**

4.   A dower estate arises solely by operation of law, and not through any contract between the parties, so that statutory provisions expressly governing contractual relations between grantor and grantee pertaining to taxes do not apply to widow's dower right or the assignment of dower.

**Quieting Title—Remainderman may Protect Interest by Suit to Remove Cloud on Title.**

5.   A remainderman may protect his interest against loss or injury, either at hands of tenant for life or some other person, by a

---

4.   Right to consider accrued taxes in assigning dower or fixing its cash value, see notes in 32 L. R. A. 748; 40 L. R. A. (N. S.) 608.
5.   See 5 R. C. L. 651.

suit in equity to remove a cloud on his title, under Section 516, Or. L.

Adverse Possession, 2 **C. J.,** p. 158, n. 29, p. 159, n. 32, 33, p. 161, n. 49, p. 188, n. 66.

Dower, 19 **C. J.,** p. 460, n. 46, p. 531, n. 29, p. 532, n. 47, p. 596, n. 89, 90.

Estates, 21 **C. J.** p. 1012, n. 25, 33.

Subrogation, 37 **Cyc.,** p. 443, n. 26.

Taxation, 37 **Cyc.,** p. 1424, n. 8, p. 1433, n. 79.

From Baker: C. H. McCULLOCH, Judge.

In Banc.

Plaintiff instituted this suit on May 6, 1925, to determine an adverse claim to the followin described real estate: Lots 4 and 5 in Block 1 of J. H. Parker's Addition to the City of Baker, Oregon. A decree was rendered in favor of plaintiff. Defendant Edna L. Baxter appeals.

The other defendants in this suit made no defense. The plaintiff claims to be the owner in fee of the whole of the two lots subject to the right of dower of the defendant Edna L. Baxter to the east one third of said two lots, as the widow of Perry F. Baxter, deceased. This defendant claims to be the owner in fee of the east one third of the two described lots, under and by virtue of a tax title reinforced by the adverse possession of the east one third of the said lots for more than the statutory period of prescription.     REVERSED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Smith & Anderson.*

For respondent there was a brief over the names of *Mr. J. B. Messick* and *Mr. C. T. Godwin.*

BEAN, J.—On February 26, 1900, defendant Edna L. Baxter, by a judgment of the Circuit Court for Baker County in the case of *Edna L. Baxter* v. *Julia E. Sherman,* was awarded possession of the east one third of the two lots which judgment was entered upon stipulation and was intended to be an assignment of dower. Mrs. Baxter took possession of the property in April, 1900, and at first constructed a small dwelling of two rooms and in later years, after purchasing it at a sale for taxes for the year 1899, erected a substantial residence of the value of about $3,000; made street improvements and constructed a sidewalk and sewer in connection with the property at a value of about $300.

The certificate of tax sale, obtained by defendant, was dated February 26, 1903, for the taxes regularly assessed on the east one third of the lots for the year 1899. The certificate was duly recorded May 28, 1903. The property was assessed to Mrs. Julia E. Sherman who then held the legal title and was in possession of the same.

After the time for redemption from the tax sale had expired and on December 26, 1906, a sheriff's tax deed was regularly issued to the defendant for the property, and was duly recorded on that date.

On November 27, 1899, Julia E. Sherman and her husband conveyed the two lots to Hardin W. Estes. On April 20, 1901, Estes conveyed the west half of the lots to the predecessor of the plaintiff. On October 30, 1905, Estes executed another deed conveying to the church the remainder of the west two thirds of the two lots. On June 9, 1906, Estes executed to the church a deed of the east one third of the lots 4 and 5, subject to the dower of defendant. The first two deeds executed by Estes to the church contained a

reservation clause to the effect that if the property, that is, the west two thirds of the two lots, was not used as a "landmark" Missionary Baptist Church, the property should revert to the grantor. On October 10, 1907, Estes executed to the church a deed embracing the whole of the two lots and revoking the reversionary clause contained in the two former deeds which conveyed only the west two thirds of those lots. The several deeds mentioned were duly recorded about the time of their execution. The name of the church has been regularly changed and on February 26, 1917, deeds of the property were regularly executed to the plaintiff, the Calvary Baptist Church of Baker, Oregon.

The defendant Edna L. Baxter contends that after her purchase was consummated and the certificate of tax sale placed on the deed records in 1903, the same served notice to all subsequent grantees and to Mr. Hardin W. Estes, grantee, during the three years prior to the time that he executed his deed to the east one third of the lots to the church; and that defendant on various occasions informed the trustees and other members of the church that she had the deed and claimed the property in fee simple as her own since the certificate of sale was recorded. Her claim is that her possession became adverse under a claim and color of title in fee simple from and after the year 1903; that the grantee of the property had notice by the records and by direct information and from her conduct with reference to the property; that she so claimed it, and therefore the suit is barred by the statute of limitations.

The testimony shows that after the certificate of sale was recorded, defendant constructed the main

portions of the permanent improvements upon this parcel of land. Defendant asserts in her testimony that she constantly claimed and asserted absolute ownership of the property, which she occupied, improved and inclosed; that she made these claims openly and told the trustees and members of the church that she claimed the property as absolute owner. Among other things she stated: "I have even told the trustees that I had a tax title there to it," and at page 13 of the testimony, she stated:

"I told them I had completed my title, I held a tax title, a tax title deed and I explained how it was and there were others, there were several of them, lots of them, and this outfit in there came and consulted lawyers about it."

This statement appears to have been made when some of the trustees and people of the church approached Mrs. Baxter for the purpose of purchasing her interest in the one third of the lots and told her that she only had a life estate.

1. The plaintiff contends, and the Circuit Court ruled that when defendant paid the taxes assessed for the year 1899, she was paying an obligation of her own, which she was required to pay; that the delinquency certificate of tax sale and the sheriff deed executed thereafter, gave her no greater right or interest in the property by adopting this plan of paying "her obligation" than by paying the tax in the regular manner prior to their becoming delinquent and placing her ordinary tax receipt of record.

Under the statute of 1854, in force in 1899, when the tax in question was levied the time for levying the tax was fixed at the September term of the county court: Hill's Ann. Laws of Oregon, Section 2783. Section 2846 of Hill's Ann. Laws, like Section 4313, Or. L.

117 Or.—9

(Olson), provides that, between grantor and grantee of any land, in the absence of express agreement as to who shall pay the taxes that may be assessed thereon before the conveyance, if such land is conveyed, at the time or prior to the date of warrant, authorizing the collection of such taxes, then the grantee shall pay the same, but if conveyed after that date, the grantor shall pay them. The tax warrant authorizing the collection of the tax mentioned for the year 1899 was dated March 10, 1900.

It is contended by counsel for defendant that when the taxes mentioned were assessed, the statute then made the tax a personal obligation of the person against whom the taxes were charged on the tax-roll, so that when the warrant for collection was assessed the tax-roll and the warrant were in the nature of a judgment against the person charged with the tax on the tax-roll, that it was deemed, in effect, a proceeding *in personam* against the person charged. Citing: *McNary* v. *Wrightman,* 32 Or. 578–580 (52 Pac. 510); *Middleman* v. *Moore,* 43 Or. 359–361 (73 Pac. 16).

Defendant asserts that the tax mentioned was the personal debt of Julia E. Sherman, who was then the owner of the real estate, or Mr. Estes, to whom she conveyed it in the latter part of the year; that the widow's dower is a legal right created by law and is in no manner the outgrowth of any contractual relationship as between grantor and grantee and, therefore, taxes levied after the husband's death, and before assignment of dower are not chargeable to the widow and are, therefore, not a debt or obligation on her part.

Turning now to books, we find that the widow in possession of her dower is liable for the taxes

assessed thereon after the final judgment assigning the dower: 19 C. J. 596, § 419. It is further stated in that section that:

"The widow should not be required to pay taxes assessed after her husband's death and before assignment of her dower, unless she is in possession during such time, or unless it is otherwise provided by statute." Citing *Jonas* v. *Hunt,* 40 N. J. Eq. 660 (5 Atl. 148); *Graham* v. *Dunningan,* 13 N. Y. Super. 629, 15 N. Y. Super. 516, 4 Abb. Pr. 426.

To the same effect, see 9 R. C. L. 594, § 36. In *Underground Elec. R. Co.* v. *Owsley,* 196 Fed. 278 (116 C. C. A. 98, 40 L. R. A. (N. S.) 609), the syllabus reads thus:

"Under a statute providing that a widow shall be endowed of a third part of the property whereof her husband died seised, taxes which accrued prior to assignment of the dower cannot, in favor of others entitled to share in the estate, be deducted from the cash value of her dower interest, which she agrees to take in lieu of dower upon sale of the property, whether they accrued before or after the death of the husband."

We read in the opinion in that case (196 Fed. 281, 116 C. C. A. 101, 40 L. R. A. [N. S.]), at page 613, this statement:

"Lord Bacon said as early as 1641 that it was then 'the common byword in the law that the law favored three things—(1) life, (2) liberty, (3) dower' (Bacon, Uses, p. 37). The Year Books and other early reports show the vigilance of the courts in watching over widows' interests. And from those times to these the right of dower has always been highly esteemed in the law. We must start with the proposition that the law will not favor deductions from the widow's thirds."

Formerly our statute provided (Hill's Code, § 2954):

"The widow of every deceased person shall be. entitled to dower, or the use, during her natural life, of one-third part of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof."

In 1893 the legislature amended that section so as to entitle the widow of every deceased person to one half part of such lands of her husband. The latter provision is now contained in Section 10053, Or. L. It appears that in 1900, upon stipulation of the parties, Mrs. Edna L. Baxter, the defendant, was awarded a judgment for only one third of the property of her deceased husband during her life.

The taxes that were assessed to Julia E. Sherman on the property for the year 1899 were not chargeable to and should not be paid by the widow Mrs. Baxter, who was afterward awarded the right of dower in the property. She did not have possession of the land or any benefit therefrom during the year 1899. When she paid the delinquent taxes on the property in 1903, she was entitled to be subrogated to the lien of the county and state, and as the delinquent taxes were not refunded to her, after the expiration of the time for redemption, she was entitled to a tax deed conveying to her the title to the land held by the owner against whom the taxes were assessed and her grantees.

The plaintiff does not plead or show any irregularity in the tax sale or certificate or any defect in the tax deed, or suggest any valid reason why the tax deed did not convey the title to the land to defendant. On the face of such instrument it appears that the title in fee simple is in defendant Edna L. Baxter.

If we consider the question of adverse possession, of course, the possession of defendant as a dowress of the property in question, would not be adverse to the owners of the fee. The question here is whether the defendant's possession of the property was adverse or not after she obtained a certificate of tax sale of the property which contained a notice to all persons, as then required by the statute, that unless the property was redeemed within three years, a deed would issue to her and which certificate of sale was placed on record and after the time for redemption from such sale had expired the sheriff's deed of the property was regularly issued to her and duly recorded; and she claimed and asserted absolute ownership of the property and placed valuable permanent improvements thereon, and informed the trustees and members of the church that she claimed to be the absolute owner of the property which conditions remained thereafter until 1925.

2. The possession of one third of the lots of defendant since April, 1900, is unquestioned. The inquiry is, Was it adverse? Since 1903, when she received the certificate of tax sale, and 1906, when she received a deed of the one third of the two lots, which at least constituted color of title to the same, she has held possession of the land, claiming to own the same absolutely, as against the whole world. She recorded the evidence of her title to that effect. She informed the officials and members of the plaintiff church that she had a complete title to the property and exercised absolute dominion over the same for a much longer period than ten years as required by the statute to obtain a prescriptive title. In fact the plaintiff alleges in its complaint:

"That defendants claim some estate or interest in the above described real property, tenements, here-

ditaments and appurtenances thereunto belonging and appertaining, adverse to plaintiff, * * "

Her possession of the lots was and is hostile and adverse to all, including the plaintiff in this case.

The true rule seems to be stated in 2 C. J., page 158, Section 285, to the effect, that it is well settled that the widow's possession of lands of which her husband died seised before assignment of dower is not adverse to his heirs. When she has taken possession or continues in possession of the land as widow, her possession is in privity with the heirs or devisees of her husband. Some decisions seem to hold that the widow cannot hold adversely before assignment of dower. Nevertheless according to the weight of authority the possession of the widow, although not in hostility to the heirs, may be converted into an adverse holding which will ripen into title if continued for the statutory period. But for this purpose it is essential that there should be some plain, decisive, unequivocal act or conduct on the part of the widow amounting to an open denial of the rights of the heirs and putting them out of possession. In support of the statement that the widow's possession may be converted into an adverse holding, many authorities are cited in the notes to that section, among which are: *Sloss-Sheffield Steel etc. Co.* v. *Taff,* 178 Ala. 382 (59 South. 658); *Brinkley* v. *Taylor,* 111 Ark. 305 (163 S. W. 521); *Hogan* v. *Kurtz,* 8 D. C. 135; *Jones* v. *Pooloa,* 11 Hawaii, 755; *Williams* v. *Thomas,* 65 Iowa, 183 (21 N. W. 509); *Reno* v. *Blackburn,* 24 Ky. Law. Rep. 1976 (72 S. W. 775); *Munroe* v. *Wilson,* 68 N. H. 580 (41 Atl. 240); *Colgan* v. *Pellens,* 48 N. J. Law, 27 (2 Atl. 633); *Criswell* v. *Noble,* 61 Misc. 483, 488 (113 N. Y. Supp. 954) (affirmed, 134 App. Div. 994 mem., 119 N. Y. Supp.

1122 mem.); *Davis* v. *Dickson,* 92 Pa. 365; *Edwards* v. *Humphreys,* 89 Tex. 512 (36 S. W. 333, 434); *Johnston* v. *Oliver,* 3 Ont. 26.

In the notes to *Commonwealth* v. *Clark,* 9 L. R. A. (N. S.), page 750, we quote the following:

"It would seem that there ought to be but little chance for argument as to the proposition that, where one takes possession of land claiming to own the same absolutely, as against the whole world, and has recorded the evidence of his title to that effect, his possession is hostile and adverse to all. The fact that he might have asserted claim in some other manner, as for instance, as life tenant, ought not to, and, according to the authorities does not, change the nature and character of his possession. * * "

That case involved the question of a life tenant claiming title by adverse possession under color of title. At page 755 (119 Ky. 93 [83 S. W. 102]), the court observes the following:

"We are of opinion that appellants' cause of action accrued upon the renunciation of the trust by Robert Bedford, which occurred when he accepted and put to record the deed from the heirs of Bedinger, June 6th, 1863. It must be presumed that the recording of the deed gave the appellant Commonwealth of Kentucky notice of the renunciation by Robert Bedford of the trust created by his mother's will, and that his possession of the land was adverse to the remainderman. The appellant, at any time within five years after its discovery of the wrongful conversion by Robert Bedford of the title to the land from a life estate to a fee simple, and not later than ten years after the act might have sued to correct or set aside the deed whereby the title was thus changed."

See, also, 1 R. C. L. 744, par. 63; *Curry* v. *Smith,* 105 Or. 82 (209 Pac. 232); *Richards* v. *Page Inv. Co.* 112 Or. 507, 522 (228 Pac. 937); *Crowley* v. *Grant,* 63

Or. 212, 217 (127 Pac. 28); *Balkham* v. *W. Iron Co.,* 43 Fed. 648 (11 L. R. A. 230); affirmed in 154 U. S. 177 (38 L. Ed. 953, 14 Sup. Ct. Rep. 1010, see, also, Rose's U. S. Notes); *Criswell* v. *Criswell,* 101 Neb. 349 (163 N. W. 302, L. R. A. 1917E, 1103); *Kinney* v. *Slattery,* 51 Iowa, 353 (1 N. W. 626, 627); *Meyer* v. *Hope,* 101 Wis. 123, (77 N. W. 720, 720); *Davis* v. *Townsend,* 145 Minn. 523 (48 N. W. 405).

3. The recording of the certificate of sale and tax deed by the defendant was constructive notice to any subsequent grantees and such constructive notice has the same effect as actual notice upon such subsequent grantees and binds equally when followed by open, continuous possession under claim and color of title: 23 R. C. L. 194, §§ 51, 52; *Elwert* v. *Hansen,* 89 Or. 399, 401 (173 Pac. 939); *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417 (35 L. Ed. 1063, 1072, 12 Sup Ct. Rep. 239, see, also, Rose's U. S. Notes); *Richards* v. *Page Inv. Co., supra.* The certificate of purchase at a tax sale after the time for redemption expires and the tax deed of defendant, which were both duly recorded, even though they had been void, were good color of title and initiated a new title affording notice to subsequent grantees of defendant's claim thereunder: 1 R. C. L. 716, § 29; *Greenleaf* v. *Bartlett,* 146 N. C. 495 (60 S. E. 419, 14 L. R. A. (N. S.) 660); *Bradbury* v. *Dumond,* 80 Ark. 82 (96 S. W. 390, 11 L. R. A. (N. S.) 772).

4. A dower estate arises solely by operation of law. It is not by force of any contract expressed or implied between the parties. It is not created by conveyance or gift by any person to the widow. Therefore, statutory provisions expressly governing contractual relations between grantor and grantee pertaining to taxes do not apply to widow's dower

right or the assignment of dower: 9 R. C. L. 563; *Butler* v. *Fitzgerald*, 43 Neb. 192 (61 N. W. 640, 47 Am. St. Rep. 741, 27 L. R. A. 252, 253); *Stitt* v. *Smith*, 102 Minn. 253 (113 N. W. 632, 13 L. R. A. (N. S.) 723, 724).

In *Richards* v. *Page Inv. Co.*, 112 Or. 507, at page 522 (228 Pac. 937, 942), we find recorded the language of Mr. Justice BURNETT as follows:

"True enough, ordinarily it is the rule of law that the possession of one tenant in common inures to the benefit of all his cotenants. It is equally true, however, that if one tenant claims the title to the whole tract in severalty and the acts of the claimant and the circumstances surrounding them bring home to the cotenant notice that the possession exercised by the claimant is hostile with view of acquiring the exclusive ownership of the whole tract, the general rule is obviated. In other words, under apt circumstances, it is as possible for a tenant in common to acquire title to the whole tract in severalty by prescription as it is to acquire such a title from one as to whom no privity of estate exists."

In *Riley* v. *City of Lexington*, 188 Ky. 88 (221 S. W. 228), the syllabus reads thus:

"Though possession by a widow is presumed to be consistent with the title of her husband's heirs, especially where there has been no assignment of dower, such possession may be converted into adverse holding by some plain, decisive, unequivocal act on her part amounting to an open denial of the rights of the heirs and putting them out of possession."

In *Mitchell* v. *Vest*, 157 Iowa, 336 (136 N. W. 1054), the syllabus reads:

"Ordinarily a tenant in common cannot hold adversely to his cotenant, or a life tenant to the remaindermen; but this rule only applies where the relationship is continuous. So that where a life tenant

foreclosed a mortgage which she held upon the property and acquired a sheriff's deed, the remaindermen having knowledge of the proceedings, and thereafter claimed to hold the property under color of the sheriff's deed, there was a sufficient ouster to set the statute of limitations in motion.''

Cases relating to tenants in common are helpful by way of analogy but there is a distinction between a widow in possession by virtue of a dower assigned to her and one in possession as a cotenant. It is stated in 9 R. C. L., page 593, Section 35: ''Ordinarily, the widow is not a joint tenant, tenant in common or coparcener with the heirs * * ''

There is a marked distinction between the situation in the present case and that in the case of *Moore* v. *Simonson,* 27 Or. 117 (39 Pac. 1105), relied upon by plaintiff in the trial court and here. In the latter case the widow was a life tenant under a will at her inception of possession of the property, and being under direct provision of the will as to how she should manage the property, namely, the widow as tenant for life and the remainder to go to the testator's daughter and grandchildren, she acquired an outstanding estate to the same property, but did not claim the real estate as absolute owner. But, on the contrary, stated repeatedly, even to the daughter directly, that she acquired and held it only for the beneficiaries under the will, and she did not change that claim, or her character of possession, until shortly before the suit was brought.

In the present case the plaintiff purchased the property in question at a tax sale. The regularity of the tax proceedings has never been questioned. In due time a tax deed was issued to her and both the certificate of sale and deed were recorded. This deed purported to convey to plaintiff all the title of Julia

E. Sherman and her grantee Hardin W. Estes.   Mrs.
Sherman and her grantee stood in the place of a re-
mainderman.   Strictly speaking, it was not an ''out-
standing'' title that was purchased by plaintiff, but
the title of the remainderman.   We know of no law
to prevent a dowress in possession of real estate,
from purchasing and obtaining title by a convey-
ance of the real property from the remainderman.

Counsel for plaintiff asserts in their brief: ''It is
the duty of the life tenant, in possession, to pay the
current taxes on the property.''   Citing: *Minter* v.
*Durham,* 13 Or. 471 (11 Pac. 231) ; *Abernathy* v. *Orton,*
42 Or. 437 (71 Pac. 327, 95 Am. St. Rep. 774).   This
is conceded, but as we have already noted, the taxes
in question were not ''current taxes'' assessed while
the widow was in possession.

The plaintiff and its predecessors in interest had
the same right to institute a suit to quiet their title
at any time after defendant's tax certificate and tax
deed of the real estate were placed on record, and
they knew that defendant claimed the entire estate
in her own right, as they did in May, 1925, when this
suit was commenced.

5. A remainderman is entitled to equitable relief
whenever necessary to protect his interest against
loss or injury, whether in the hands of the preceding
tenant for life or some other person.   A remainder-
man may, during the continuance of the preceding
estate, maintain a suit in equity to remove a cloud
upon his title: 21 C. J. 1012, § 171; Or. L., § 516, and
notes; *Kingsley* v. *Kressly,* 60 Or. 176 (111 Pac. 385,
118 Pac. 678, Ann. Cas. 1913E, 743).

We find that the defendant Edna L. Baxter has
been in the continuous, notorious, open, exclusive and
adverse possession of said east one third of said

property under color of title and claiming to own the same in fee ever since 1906, and that the officers of plaintiff knew of defendant's claim as the absolute owner, as early as 1914, when she fairly informed them thereof. By virtue of the tax deed and adverse possession the defendant is the owner in fee simple of said east one third of said two lots. The suit of plaintiff is barred by the statute of limitations. The decree of the Circuit Court is reversed and one will be entered in accordance herewith.

REVERSED AND DECREE ENTERED. REHEARING DENIED.