## Murphy, et al. v. Newingham, et al.

(Decided December 20, 1912.)

### Appeal from Pike Circuit Court.

1. Land—Unconditional Parol Gift—Adverse Holding—Permissive Holding.—Where there is an unconditional parol gift of a well defined body of land, accompanied by an actual possession for 15 years or over, with claim of ownership, such possession ripens into title, and the donor cannot recover the land. If, however, one enters upon land by the owner's permission, expecting that the owner will give it to him, then such possession is not a hostile holding.

2. Land—Action to Quiet Title—Finding of Chancellor.—In an action to quiet title to a tract of land, based on adverse possession under an unconditional parol gift, evidence examined and held to sustain the finding of the chancellor that plaintiffs held the land by permission of the donor, and their holding was not adverse.

O'REAR & WILLIAMS and F. W. STOWERS for appellants.

BUTLER & MOORE and B. F. COMBS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John Rutherford owned a large body of land in Pike County, Kentucky, on Pigeon Roost Fork of Pond Creek. He had several children. As each of these children became of age, or was married, he settled them on different portions of his farm. Alex Murphy married Polly Rutherford, daughter of John Rutherford, in the year 1878. Nine children were born to them. Soon after their marriage, Alex Murphy and his wife, Polly, settled on the tract in controversy, which consists of about 202 acres of land. In the year 1903 John Rutherford gave to W. J. Newingham, Charles S. Thorn and A. J. King an option on the coal lying on his farm, including the land in controversy. He executed a deed on August 12th to the persons holding the option. In October of the same year, the vendees in the deed sold and conveyed the coal to the Williamson Coal Company. Alleging that the land was given equally to Alex Murphy and Polly Murphy by John Rutherford, that Polly Murphy died in the year 1893, and her interest descended to their children, subject to Alex Murphy's curtesy therein, and that Alex Murphy and his children were the joint owners of the tract in controversy, this action was brought against

W. J. Newingham and others to quiet plaintiffs' title. It was further alleged that at the time defendants acquired title, plaintiffs were in adverse possession of same, and that the deed to defendants was champertous. By answer, defendants denied the allegations of the petition, and pleaded title in themselves. They also set up certain facts in estoppel of plaintiffs' claim, and alleged that they acquired title without notice or knowledge of plain-plaintiffs' claim. On final hearing, plaintiffs' petition was dismissed, and they appeal.

The evidence for plaintiffs shows that soon after the marriage of Alex and Polly Murphy, in the year 1878, they settled on the land in dispute. John Rutherford marked the lines for them. In 1884, John Rutherford gave the lands to Alex and Polly Murphy. Since that time they had paid the taxes on the land. After taking possession of the land, they built a dwelling house, which they added to from time to time. They also built tenant houses, barns and outhouses. They planted a fruit orchard and cleared and fenced about 75 acres of land. They also cut and sold timber from the land in quantities for saw log purposes. These acts of possession were known to John Rutherford. John Rutherford had other children, to whom he deeded the lands upon which they had settled. When Alex and Polly Murphy settled on the land, he stated that he intended to give it to them. Subsequently he pointed out their lines, and said the land was Alex's and Polly's, and not his. The foregoing facts appear from the testimony of Alex Murphy and other witnesses. On cross-examination, Alex Murphy stated that he knew that John Rutherford had optioned and sold the land in question to Newingham and others in 1903, and understood that he got $10 per acre for it. He saw Dr. Deaton make a survey of the land at that time. Upon being asked: "Did you object to Mr. Rutherford, or make any complaint to Mr. Rutherford's selling this land to Mr. Newingham?" he answered: "Yes, sir, I told him to make a reserve of the property around my house and property, that is, of the surface. Mr. Rutherford told me he intended to put me on level land." On redirect examination, he was asked: "What caused you to ask Mr. Rutherford to reserve you a boundary around your house in the sale to defendant?" He answered: "Because he tried to make me believe that I couldn't hold the land without a deed, and I was ignorant of the law. I claimed the land then as I do now."

For defendants, John Rutherford testified that he never gave anything to Alex Murphy. He settled Alex's wife on the land, telling them to go live on it and have what they could make on it. So far as he was concerned, he did not intend to make a title until he got ready. He intended to let them live on it until he got ready to dispose of his estate. He also said that at the time Alex and his wife were put on the land, he did not mark any boundary. For a while he paid the taxes for his children, but afterwards concluded that as they were getting the benefit of the land they ought to pay the taxes. He intended the title to pass to his children whenever he got ready to make it. He first made a will, but afterwards got dissatisfied and tore the will up. He then turned in an made deeds to some of his children. In 1903, he gave defendants an option on the land and afterwards deeded the land to them. He received for the coal on the land in controversy $2,000. He took $1,500 of this sum and paid for a tract of 25 acres of land which plaintiffs had purchased from W. A. Rutherford. Of the balance he gave $450 to Alex Murphy, who distributed it among his nine children, giving them $50 apiece. Witness retained $50 of the amount of the purchase price, because he felt like he was entitled to that much. The deed from W. A. Rutherford and wife was made to plaintiffs, and put to record. Witness also conveyed the surface of the land in controversy to the children of Polly Murphy. He knew that Alex Murphy was selling timber off the land, and also knew that in the year 1881, Alex Murphy and W. A. Rutherford exchanged tracts. He permitted them to trade among each other, and permitted Alex Murphy to use the timber from the land for the purpose of raising his children. While he could not say for certain that plaintiffs knew of the option he gave to defendants, it was talked about at the time, and was generally understood by everybody. The surveyor boarded with him at the time the land was surveyed, and were there for a week or ten days, and passed by Alex Murphy's house in making the survey. On cross-examination, witness stated that he brought a farm on Blackberry and gave it to his daughter, Jane Hatfield. He deeded to William A. Rutherford the home place. He further gave to Parlee Riddle a portion of the land. He also gave to Floyd Rutherford's heirs a portion of his land. Witness said that at one time Alex

Murphy and W. A. Rutherford swapped places for a while.

Certain of the defendants also testified that they had no notice or knowledge of plaintiffs' claim; that the title to the land was in John Rutherford.

A number of Alex Murphy's children testified to their acts of possession, and to the fact that they never made the trade with W. A. Rutherford for the 25 acres of land, and did not know what the $50 apiece was paid to them for. The husband of one of the girls testified that the 25-acre tract conveyed by W. A. Rutherford was worth only about $300.

It is well settled that where there is an unconditional parol gift of a well-defined body of land, accompanied by an actual possession for 15 years or over, with claim of ownership, such possession ripens into title, and the donor cannot recover the land. If, however, one enters upon land by the owner's permission, expecting that the owner will give it to him, then such possession is not a hostile holding. Commonwealth v. Gibson, 85 Ky., 666; Thompson v. Thompson, 93 Ky., 435; Owsley v. Owsley, 117 Ky., 47. The main question in this case is: Was there an unconditional parol gift of the land, or did Alex Murphy and his wife and children hold merely by permission of John Rutherford? Alex Murphy does not contend that John Rutherford gave him and his wife the lands at the time they took possession. He does say, however, that John Rutherford marked out the boundary, and that in the year 1884 John Rutherford made a gift of the lands to him and his wife. If the gift was made at that time, then the holding of the plaintiffs was adverse from that moment, and having held the land for more than 15 years, their possession ripened into title. It appears that prior to his wife's death, Alex Murphy controlled the lands, and that after his wife's death he controlled and managed the lands for the benefit of his children. Alex Murphy himself testifies that at the time of the sale of the coal to defendants he told John Rutherford to make a reserve of the property around his house, that is, of the surface, and that Mr. Rutherford told him he intended to put him on level ground. It is true that he afterwards stated that the reason he asked Mr. Rutherford to reserve the boundary around the house was that Mr. Rutherford tried to make him believe that he could not hold the land without a deed; that he was ignorant of the law, and claimed the land then as he

did when he testified.  Notwithstanding this explanation, however, his conduct on the occasion when the mineral was sold is certainly a circumstance going to show that his and his children's holding was merely by permission of John Rutherford, and not adverse to him.  In addition to this, we have John Rutherford's sworn statement that he never gave anything to Alex Murphy; that he placed him and his wife on the land, and gave them permission to occupy and use it for the purpose of supporting themselves and their children.  He first intended to will it to them, but afterwards changed his mind.  He did make deeds to those children to whom he gave title.  He never made any deed to Alex Murphy or his children.

The evidence upon the question of a parol gift being equiponderant, and the circumstances and relations of the parties being such as to indicate a permissive rather than an adverse holding, we see no reason to disturb the finding of the chancellor.

Judgment affirmed.