## Tippenhauer v. Tippenhauer.

(Decided April 30, 1914.)

### Appeal from Campbell Circuit Court.

1. **Land—Parol Gift—Adverse Possession.**—Where a father permits his son, or one person permits another as an accommodation to enter and occupy a house or land, without consideration, and under a verbal consent, no presumption of a gift arises from the mere act of taking possession of the property under this arrangement, nor will the person who enters into possession of the property be permitted to set up a title to it by adverse possession unless the intention to claim it adversely is actually brought home to the donor by such acts or conduct on the part of the donee as would put him on notice that a hostile claim of title was being asserted, and this character of holding has continued for the requisite statutory period. In the absence of such acts or conduct as would furnish this notice of a hostile claim,

the entry will be deemed amicable and the possession per-missive.

2. **Land—Parol Gift or Purchase—Adverse Possession.**—Where the entry is under an express unconditional gift or parol purchase, it is not necessary that the person in possession, in order to claim it, should openly assert his right to the property adversely or in a notorious way, or do more than exercise such ordinary acts of ownership in connection with the property as are usually exercised by owners.

3. **Land—Parol Gift—Adverse Possession.**—Where a person takes possession of land under a parol purchase or under an express unconditional gift, and holds and claims it as his own, his pos-session will be deemed adverse from the beginning, and if it is continued for the statutory period, it will ripen into a good title, and this upon the theory that it was intended by the vendor or donor at the time of the sale or gift that the possession should be adverse, and therefore he had all the time notice of the adverse holding. But, on the other hand, when the donee enters upon the possession of land merely through the generosity or kindness of the owner, unaccompanied by any express gift of the property, the entry will be deemed amicable and the hold-ing permissive until the occupier asserts title in himself and this hostile claim of title is brought to the notice of the owner.

KELLY & REGENSTEIN for appellant.

BAILEY & VEITH for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On the merits of this case the only question involved is, did appellant and her husband occupy the house, in which they lived for many years, adversely to the legal title holder, or by his permission? The lower court held that the occupancy was not adverse but amicable, and in this ruling we concur.

The pleadings in the case presented the issue in this way: The appellant, in 1913, brought a suit in equity against Catherine Tippenhauer, widow of George Tip-penhauer, Sr., and who has died since the judgment be-low was rendered, to quiet her title to the house and lot in controversy. In this suit she averred that in 1881 George Tippenhauer, Sr., gave said property (described as a house and lot in the city of Newport), to his son, George Tippenhauer, who was then the husband of plain-tiff, and that on said day she and her said husband moved on said property and took full and complete possession thereof, and that she has been in the actual, peaceable, exclusive, notorious, continuous, uninterrupted, adverse possession of the whole of said property ever since, hold-

ing it and occupying and using it under a claim of right and ownership, and adverse to said George Tippenhauer, for a period of more than fifteen years, and more than thirty years next before defendant set up her claim as hereinbefore stated."

In an amended petition it was further averred, in substance, that George Tippenhauer gave the property in question to his son, George Tippenhauer, the husband of plaintiff; that she and her husband moved into the property in 1881 and lived there and occupied it in the manner stated in the petition. She further averred that her husband died in 1897, leaving surviving him his widow, and George Tippenhauer his only child, and that from the date of the death of her husband, she and her son, George Tippenhauer, occupied and held the property in the manner stated, until the death of her son in 1911. That her son, by his last will, devised to her all his right, title and interest in the property, and since his death she has been holding and claiming it as set out in her petition.

For answer to these pleadings, Catherine Tippenhauer, the appellee, who was the widow of George Tippenhauer, Sr., denied specifically all the averments of the petition except the occupancy of the house. She further pleaded that her husband, George Tipperhauer, Sr., died in 1903, and that before his death he made his last will in which he devised to her all of his property, including the house in controversy, and that, by virtue of his will, she was the owner of and entitled to the possession of this house and lot. She further set up that the occupancy of the house by the plaintiff and her husband and her son had always been by the permission of George Tippenhauer, Sr., and herself, and not otherwise.

To this answer a reply was filed, which completed the pleadings.

Preliminary to taking up the merits of the case, counsel for the appellant complain that the lower court committed errors prejudicial to the rights of their client in prematurely submitting the case, in refusing to transfer the issue of adverse possession to a jury for trial, and in overruling exceptions to certain depositions taken on behalf of appellee, as well as in limiting the time in which depositions should be taken.

Whether the court committed error in refusing to transfer the issue to a jury and in overruling exceptions

to certain depositions taken on behalf of appellee, is not material, because if the issue relating to the nature of the possession of the property had been submitted to a jury, the trial court, upon the introduction of the evidence for the plaintiff as it appears in this record, would necessarily have directed a verdict in favor of the defendant, upon the ground that the evidence for the plaintiff failed to show an adverse holding of the property by the plaintiff and her husband or either so that these errors could not have been prejudicial.

Nor did the court prematurely submit the case. Neither was any prejudicial error committed in failing to give further time for the plaintiff to take depositions, as it appears that all the evidence plaintiff desired to take is in the record and has been considered by us, as doubtless it was by the lower court. It is true that on May 17, 1913, the plaintiff moved the court for permission to take the remainder of her proof in chief, as well as proof in rebuttal, and that the court overruled the motion to take other evidence in chief. But, notwithstanding this, the plaintiff did take the depositions of several witnesses, whose evidence we have considered in disposing of the case, and it does not appear that she was denied the right to take the depositions of any witnesses. In short, so far as the record shows, all the evidence that plaintiff desired to produce was taken.

It will be observed that the petition sought relief upon the ground that George Tippenhauer, Sr., presented the property to his son, George, the husband of appellant, in 1881, as a gift, and immediately thereafter the grantee in the gift took possession of the property and claimed and occupied it as his own, openly and adversely to the grantor and all others, until his death in 1897, and that after his death his widow and their child claimed and occupied it openly and adversely to the grantor and everybody else until the death of the son in 1911, and that thereafter she claimed and occupied it in the same manner.

It was, therefore, necessary to a successful maintenance of the suit that the plaintiff should introduce evidence showing an express gift of the property to George Tippenhauer, Jr., with an uninterrupted possession, accompanied by the usual acts of ownership exercised by persons who own property, or that George Tippenhauer, Jr., and the plaintiff after his death, claimed the property as their own, openly and adversely to the

donor and everybody else for at least the statutory period of fifteen years, and that this claim of right and hostile holding was brought to the notice of the donor. If, however, the plaintiff here established the character of occupancy necessary to constitute adverse possession in her husband, then she had the right to tack on to the adverse possession of her husband her own holding, if it was in fact adverse, and thereby make the adverse possession continuous from the beginning.

But where a father permits his son, or one person permits another as an accommodation to enter and occupy a house or land without consideration and under a verbal consent, no presumption of a gift arises from the mere act of taking possession of the property under this arrangement, nor will the person who enters into possession of the property be permitted to set up a title to it by adverse possession, unless the intention to claim it adversely is actually brought home to the donor by such acts or conduct on the part of the donee as would put him on notice, or put a man of reasonable prudence on notice, that a hostile claim of title was being asserted, and this character of holding has continued for the requisite statutory period: Chambers v. Pleak, 6 Dana, 426; Morton v. Lawson, 1 B. Mon., 45. In the absence of such acts or conduct as would furnish this notice of a hostile claim, the entry will be deemed amicable and the possession permissive.

If a person, who enters upon and occupies property for fifteen years, or any number of years, merely by the generosity or favor of the real owner, could successfully assert title to it from the beginning, or from any subsequent period, upon the ground of adverse possession growing out of long-continued, peaceable and permissive occupancy, unaccompanied by any overt act of onwership sufficient to put the real owner upon notice that his title was in danger, the beneficiary of the generosity or favor of another could take advantage of his kindness and deprive him of his property without notice that a hostile claim was asserted. A condition like this the law will not tolerate.

An amicable entry, not under an express, unconditional gift or purchase, although it may be accompanied by peaceable possession, will not ripen into a title in the occupier until after the real owner has been given, for the statutory period, warning of the purpose of the occupier and put upon his guard for the requisite time

that the intention is to take the property under an adverse claim. If, however, the entry is under an express, unconditional gift or a parol purchase, it is not necessary that the person in possession in order to claim it should openly assert his right to the property adversely, or in a notorious way, or do more than exercise such ordinary acts of ownership in connection with the property as are usually exercised by owners; as, for example, by the payment of taxes, the making of repairs, and the keeping up of insurance. Many cases have been written illustrating these general principles, and among them we may note the following:

In Commonwealth v. Gibson, 85 Ky., 666, the court, in considering a case where a son, who had entered upon the possession of land under a parol gift from his father, asserted title to it by adverse possession, said: "If one in fact enters under a purchase or a gift, although it may be verbal, and holds the land by actual, open possession, claiming it as his own, such possession is adverse, and a right of action at once accrues to the vendor or donor. The moment such possession begins, the owner is disseized. It is immaterial whether the entry was by the owner's consent or not. If, after entry, the newcomer claims the land as his own, and the owner has notice of it, either actual or constructive, then there is a disseizin. Whether it has occurred, is a question depending upon the circumstances. * * * If one enters upon the land by the owner's mere permission, expecting merely that he will give it to him, then such a possession is not a hostile holding; but where there is an unconditional parol gift of it, accompanied by an actual possession of fifteen years or over, with claim of ownership, the donor cannot recover it, although the donee may have entered expecting that the donor would *in futuro* convey or devise the land to him." In that case the donee took possession of the land under an express parol gift, and during the time he was in possession paid the taxes on it, controlled it as his own, and the donor did not exercise any authority over it. To the same effect is New Domain Oil Co. v. Gaffney Oil Co., 134 Ky., 792.

In Ward v. Edge, 100 Ky., 757, the court said:

"It is a well-settled principle of law that possession of land, as the result of an entry on the premises by permission of the legal owner, will not become adverse until some act is committed by the occupant rendering it so,

and notice thereof brought home to the holder of the legal title."

In Thomson v. Thomson, 93 Ky., 435, the court again marked the well-recognized distinction between that class of cases where the donee enters upon and takes possession of the property under an express parol gift and where he enters upon and takes possession of it merely as a favor or act of kindness or accommodation, unaccompanied by words from which it might be inferred that the donor intended to present the donee with the property as a gift, and said that in the last class of cases the entry is amicable, "and no presumption of adverse claim exists. Adverse possession, in order to bar recovery, should be brought to the notice of the joint tenant or landlord, and, therefore, proved to have been open and of such character as to clearly show that the occupant claimed the land as his own. But in this case, as in every one like it, when it is shown an absolute gift of land was made by the father to the son, and that the latter took and held under it, adverse possession followed and continued as a legal consequence, and the donor must be presumed to have had notice of such adverse claim, because it was intended and procured by him to be so." To the same effect are: Gilbert v. Kelly, 22 Ky. L. R., 353; Creech v. Abner, 106 Ky., 239; Owsley v. Owsley, 117 Ky., 47; Robinson v. Huffman, 113 S. W., 458.

In Padgett v. Decker, 145 Ky., 227, it is said: "Where a possession is in its origin amicable, it will not become adverse so as to set the statute of limitation in motion unless the property is in fact held adversely and in such a manner as to apprise a person of ordinary prudence that the holding is adverse."

In Murphy v. Newingham, 151 Ky., 360, it was again said: "It is well settled that where there is an unconditional parol gift of a well-defined body of land, accompanied by an actual possession for fifteen years or over, with claim of ownership, such possession ripens into title, and the donor cannot recover the land. If, however, one enters upon the land by the owner's permission, expecting that the owner will give it to him, then such possession is not a hostile holding."

The substance of these cases upon the point under consideration is that where a person takes possession of land under a parol purchase or under an express unconditional gift and holds and claims it as his own his pos-

session will be deemed adverse from the beginning, and if it is continued for the statutory period, it will ripen into a good title, and this upon the theory that it was intended by the vendor or donor at the time of the sale or gift that the possession should be adverse, and therefore he has all the time notice of the adverse holding. But, on the other hand, when a donee enters upon the possession of land merely through the generosity or kindness of the owner, unaccompanied by any express gift of the property, the entry will be deemed amicable and the holding permissive until the occupier asserts title in himself and this hostile claim of title is actually brought to the notice of the real owner by such acts or conduct on the part of the occupier as would put a reasonably prudent person upon notice of his intention to assert claim to the land by adverse possession, and in this character of cases the adverse holding does not begin until the character of notice indicated has been brought home to the real owner.

With this expression of our views upon the law applicable, let us see now the circumstances under which the husband of applicant took possession of this land and how it has since been held.

Waiving the competency of the evidence of applicant, who testified that George Tippenhauer, Sr., her father-in-law, was engaged in the undertaking business and also operated some brick-yards of which her husband was foreman, she said, in relating the manner in which they first took possession of the house that: "We lived about two years with my mother-in-law, and my husband wanted to go to housekeeping, and went up town to look for a house, and we rented a place, and my father-in-law said, 'The cottage is vacant.' He said for us to move into the cottage; my husband and I and the baby. He was foreman at the brick-yard; and he said he could not send messages; that he could not go way up town; that he would have to have him close by and that we should move into the cottage; that the cottage was ours, to live there." Asked, "Why did you and your husband go to housekeeping in the property described in the petition instead of going up town as you intended doing?" she answered, "He wanted us to be close; be on hand. I trimmed coffins and my husband was foreman of the brickyard. He gave us the cottage to live in, and he said the cottage was ours and he did not want us to go up town."

Mrs. Kate Rudolph, a sister of the appellant, testified as follows: "Q. State if you ever heard George Tippenhauer, your sister's father-in-law, say anything about the title to the property where your sister now lives. Please tell what he said? A. He told me, 'that house is Minnie's.' Q. When and where was that and who was present? A. We were at his house; we were lunching, and he said, 'that house is Minnie's.' We were talking about the cottage. Q. State if you ever heard the defendant, Catherine Tippenhauer, say anything about the ownership of this property; tell when it was and where and who was present and what she said. A. Well, when they remodeled the house I said to her, 'How strange you are fixing the stairs in the sitting room,' and she said, 'If anything happens Minnie will have to rent it out.' " She further said that this conversation took place about two years before the husband of appellant died.

Mrs. Burbeck also said that she heard the old man say, "That home shall be Minnie's and no one can keep her out of that. "He told me twice."

The appellant also relates some conversations that she heard between her mother-in-law and her husband during the life of her father-in-law, but these conversations throw no light on the transaction, because the mother-in-law was not then the owner of the property or authorized to make any gift of it. For a like reason, declarations said to have been made by Mrs. Shoen, a daughter of George Tippenhauer, Sr., are irrelevant.

It might, however, be mentioned in passing that it appears that Mrs. Shoen said to the appellant, "Minnie, I am going to Mrs. Anstead and I want you to make up your mind what you are going to do. You know mother is queer, and after her death I will give you the papers," and Minnie said, "Yes; you tell mother this is no inheritance; it is my house, and I do not have to wait until anybody dies." And that she further said: "This is George's home, and after his death it goes to Babe, and after Babe's death you have nothing to show, and therefore death breaks everything." The "Babe" referred to was the son of appellant, who died as before stated in 1911. These statements of Mrs. Shoen, while not competent evidence for or against the appellant, are merely noticed for the purpose of illustrating the attitude of the old people, who were apparently willing that their son George should occupy the house as long as he lived,

and that his son George should have it as long as he lived, but that the death of both ended this arrangement, or, as expressed, by Mrs. Shoen, "death breaks everything."

This evidence, which presents the whole of the case for the appellant, utterly fails to support the averments of the petition and is entirely insufficient to bring the case within the scope of the authorities we have ·cited. There is no evidence of an express or unqualified gift of this property by George Tippenhauer to his son, nor is there any evidence that the son or his wife or their child ever asserted title to the property or exercised towards it acts of ownership that would give notice of an adverse holding. The only fair inference that can be drawn from this testimony is that the father wanted his son to be near him and therefore permitted him to live in the house, and after the death of his son, his widow and their child were permitted to occupy the house, but when the child died, the old people apparently felt that their obligations were ended and that the property should return to the real owners.

The burden of proof in this case was on the appellant to show either that her husband took possession of the property under an express unqualified gift from his father, or that having entered upon the property as a mere tenant at will of his father, he openly and publicly renounced his tenancy and asserted title in himself, and either brought home notice to George Tippenhauer, Sr., or else by his acts and conduct put him on notice that he was holding and claiming adversely. And there is no evidence to support either of these propositions or to show that the appellant or her husband did more than merely occupy the property.

It is also worthy of notice that although this property was occupied continuously by the appellant and her husband for thirty years or more, it appears that they never paid any taxes on it or had it insured, or improved or repaired it in any manner. It is true that there is some idle talk in the record about money that George Tippenhauer, Jr., made on a prize fight having been expended in improving the house, but we have paid but little attention to this.

So that looking at the case as presented by the evidence of the plaintiff, without considering at all the evidence introduced for the defendant, we find no diffi-

culty in reaching the same conclusion as the lower court that the entry and holding was purely permissive.

Noticing now for a moment some of the evidence for the defendant, it appears that the property was always listed in the name of and the taxes on it paid by George Tippenhauer, Sr., during his life, and after his death by his widow, Catherine; that in 1886 and again in 1895 George Tippenhauer, Sr., mortgaged this property without asking the advice or consent of his son or daughter-in-law. It is further shown that they kept it insured. In addition to this, extensive improvements were made on the property by George Tippenhauer, Sr., and at different times men were employed and paid by him to plaster and paper and paint and otherwise repair it. In short, so far as it was necessary to do so, George Tippenhauer, Sr., during his life, and his widow, the appellee, after his death, exercised all acts of ownership over the property that owners usually do.

The judgment is affirmed.