## Hall, et al. v. Hall, et al.

(Decided February 19, 1918.)

### Appeal from Knott Circuit Court.

1. Adverse Possession—Parol Gift.—Fifteen years' adverse possession of land under an absolute and unconditional parol gift will ripen into title.

2. Adverse Possession—Parol Gift of Land—Subsequent Entry of Donor—Effect—Statute of Limitations.—Where a father makes a parol gift of land to his son and places him in possession, the subsequent entry of the father on the land will not stop the running of the statute where he disclaims title in himself or admits that both the title and possession are in the donee.

3. Adverse Possession—Parol Gift of Land—Joint Claim—Joint Acts of Ownership—Effect.—Where both the donor and donee by parol are present claiming the land and exercising acts of ownership, possession is in him who has the title.

4. Adverse Possession—Parol Gift of Land—Disaffirmance—Limitation.—One making a parol gift may, if he chooses, repudiate or disaffirm his act any time before the running of the statute, and if he re-enters asserting his ownership to the land before the bar is complete, the statute is stopped. The same is also true of one who remains on the land after he makes the gift and reasserts his ownership.

5. Adverse Possession—Parol Gift—Occupation by Permission.—If one enters upon land by the owner's permission merely expecting that the owner will give it to him, such permission and entry will not constitute a hostile holding.

6. Adverse Possession—Parol Gift—Evidence.—In action for a recovery of land, evidence examined and held insufficient to show that plaintiffs acquired title by adverse possession under a parol gift from their grandfather to their father.

FALKNER & FALKNER BLAIR & HAWK, A. F. BYRD, W. A. STANDFIL and WM. G. DEARING for appellants.

SMITH & COMBS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This suit was brought by the widow and heirs of Miles Hall, Jr., commonly known as "Dog" Hall, against Joe Hall and the Beaver Creek Consolidated Coal Company to recover a large tract of land lying on Beaver Creek in Knott county. On final hearing the petition was dismissed and plaintiffs appeal.

Plaintiffs claim the land by adverse possession under a parol gift from Miles Hall, Sr., to his son, "Dog" Hall, while defendants claim under a deed from Miles Hall, Sr., to Joe Hall.

It appears that Miles Hall, Sr., purchased the land from Austin Vance on January 26, 1883, and paid the entire consideration himself. Thereupon he and his wife moved on and took possession of the land. In the year 1884, "Dog" Hall and plaintiff, Lourina Hall, were married and moved into the house occupied by Miles Hall, Sr., where they remained for about a year. They then moved to the land of Bolen Bill Hall on the head of Beaver Creek, where they stayed for three or four years. They then moved back and lived with Miles Hall, Sr., until the year 1892 when Dog Hall died. Thereafter plaintiffs continued to live on the land with Miles Hall, Sr. In the year 1899, Miles Hall, Sr., sold and conveyed the land to his youngest son, Joe Hall, for $500.00. Soon thereafter Miles Hall, Sr., moved to the farm occupied by his son, Joe, and lived there until his death in 1908. On February 1, 1910, Joe Hall and his wife, sold and conveyed the mineral-rights to the Gibson Coal and Coke Company, and on the eighth day of April, 1913, the Gibson Coal and Coke Company, sold and conveyed the mineral rights to the Beaver Creek Consolidated Coal Company. During all this time, Lourina Hall and certain of her children have continued to live on the land. It further appears that Miles Hall, Sr., though an invalid and confined to the house a great portion of the time, was a successful trader and made more money than any of his children.

According to the testimony of Lourina Hall, her husband claimed the land from the day he first went on it. He sold the timber off the land, not only to others, but to his father, Miles Hall, Sr. He also had tenants on the land who paid the rents to him. When her husband was

on his deathbed, Miles Hall, Sr., said to him, "Your money paid for this land and if you die, I intend to give it to your children." She further testified that after Miles Hall, Sr., had made the deed to Joe Hall in 1899, he told her he had deeded the land to Joe to take care of her husband's children until they became of age, and that her husband during his lifetime and she and her children after his death, had been continuously living upon and claiming the land to the full extent of the boundary. On cross-examination it developed that witness and Miles Hall, Sr., did not speak for a year or more at a time. She also stated that Joe Hall helped her and her children by furnishing them corn and articles from his store for which no charge was made. She also admitted that Miles Hall, Sr., rented the land to certain tenants and that Joe Hall had certain tenants on the land after the deed was made. She further admitted that Miles Hall, Sr., claimed the land all the time until he conveyed it to Joe Hall and then "he allowed to give it to the children." Town Hall, a son of Dog Hall, testified that his grandfather, Miles Hall, Sr., did not claim the land at any time that he could remember. He further claims that he had a conversation with his grandfather, who stated that he was making the deed to Joe Hall for him to take care of the land until the youngest child of Dog Hall became of age, when Joe was to deed it back, but if any of the children "lawed" before that time, he was to have nothing. Miles Hall, a son of Dog Hall, testified that his mother and the other children had lived there on the land all their lives and had claimed it. He admitted on cross-examination, however, that Joe Hall had claimed the land, too, and always kept tenants on it. Jeff Hall, who is a brother-in-law of Dog Hall and Joe Hall, testified that he moved on the land after the old man (Miles Hall, Sr.), had been living there for two years and Dog Hall had been living there for twelve months. Miles Hall, Sr., was a great trader and made money by trading. He claims that Miles Hall, Sr., purchased other lands and settled his other children on them, and it was his understanding that Dog was to have the land in controversy. While there, Miles Hall, Sr., stated that he had made a deed to Joseph. Witness asked him how he came to do that, when he stated that he wanted Joseph to take and control the land until the children became of age, and if they married to suit

Joseph, he was to deed it back to them, and if they didn't, Joseph was to keep the land. Witness further stated that he got permission to "tend" the land from both Miles Hall, Sr., and Miles Hall, Jr. On cross-examination he testified that Miles Hall, Sr., had the first clearing made on the land. He further stated that Joseph had a renter on the land, either on the lower or upper end all the time after he bought the land from his father. Wyatt Martin testified that Miles Hall, Sr., always said that the land belonged to Miles Hall, Jr., or Dog; that Dog paid $400.00 on the land. Since the death of Miles Hall, Jr., he had heard the old man say, "it belonged to Dog's little boys." Sherman Terry testified that he rented a portion of the land in controversy, first from Miles Hall, Sr., and afterwards from Miles Hall, Jr. Miles Hall, Jr., was claiming the land as his own at the time witness rented it from his as well as the time he rented it from the old man. Ed Waddle, who married a daughter of Dog Hall, testified that he was present once when a deed from Miles Hall, Sr., to Joe Hall was read. The deed contained a provision that Joe Hall was to reconvey the land when the youngest child of Dog Hall became of age. Meek Hall testified that Dog Hall hired him to split rails on the land and paid him for the work. If Miles Hall, Sr., ever claimed the land, he didn't remember it. Frankie Waddle, one of the plaintiffs, testified that her grandfather told that the land belonged to her and her brothers and sisters. She was present when Miles Hall, Sr., acknowledged the deed to Joe Hall, and he stated that if any one of the heirs lawed Joe for his money, the one that lawed wasn't to have any interest in the land. Miles Bates stated that he heard Miles Hall, Sr., say that he had bought that land for Dog.

For the defendants, numerous witnesses testified that Miles Hall, Sr., always claimed the land until he conveyed it to Joe and placed numerous tenants on it and exercised other acts of ownership. After Joe purchased the land, he had tenants on it practically all the time and merely permitted his brother's wife and children to live on the land. During that time he assisted them in cultivating and making the crops and hauling the corn, and furnished them goods and provisions out of his store. Plaintiff and her children never laid claim to the land at all until the surveyors attempted to make

the survey preparatory to the sale to the Gibson Coal and Coke Co.

It may be conceded that fifteen years adverse possession of land under an absolute and unconditional parol gift will ripen into title. Owsley v. Owsley, 117 Ky. 47, 77 S. W. 397; Delano, et al. v. Air, et al., 157 Ky. 369, 163 S. W. 216. It may further be conceded that where a father makes a parol gift of land to his son and places him in possession, the subsequent entry of the father on the land will not stop the running of the statute where he disclaims title in himself or admits that both the title and possession are in the donee. Owsley v. Owsley, *supra;* Tippenhauer v. Tippenhauer, 158 Ky. 639, 166 S. W. 225. However, where both the donor and donee are present claiming the land and exercising acts of ownership, the possession is in him who has the title. Owsley v. Owsley, *supra.* It is also the rule that one making a parol gift may, if he chooses, repudiate or disaffirm his act any time before the running of the statute, and if he re-enters asserting his ownership to the land before the bar is complete, the statute is stopped. The same is true also of one who remains on the land after he makes the gift and reasserts his ownership. Owsley v. Owsley, *supra.* Another rule, equally applicable, is that if one enters upon land by the owner's permission merely expecting that the owner will give it to him, such permission and entry will not constitute a hostile holding. Murphy v. Newingham, 151 Ky. 360, 151 S. W. 930; Commonwealth v. Gibson, 85 Ky. 666, 4 S. W. 453; Polly's Heirs v. Polly, 82 Ky. 64, 5 R. 801; Owsley v. Owsley, *supra.*

Viewing the facts of this case in the light of the above principles, we find that not a single witness testifies to the fact that Miles Hall, Sr., gave his son, Dog, the land or ever stated that he had given it to him. The most that can be claimed is that he said that the land belonged to Dog or his children, or that he intended to give it to his children. Indeed the strongest evidence on the question is that he intended to give the land to Dog's children, but never carried out his intention. Indeed the evidence that he intended to make such a gift tends to overcome plaintiffs' evidence to the effect that he had made such a gift. Not only so, but the evidence of the statements made by Miles Hall, Sr., must be construed in the light of his conduct. That he claimed the land after

his son, Dog, came to live with him and continued to exercise acts of ownership over it until Dog's death, is shown not only by the evidence of defendants but by the evidence of plaintiffs. As a matter of fact, Dog only lived on the land for a continuous period of about four years and the fact that during that time he placed tenants on the land, or collected the rents from them, or sold timber from the land, viewed in the light of the fact that his father was an invalid and was unable himself to get around, was in no way inconsistent with, or adverse to, his father's possession as the true title holder. It is also clearly shown that from the time of Dog's death to the time of the sale to his son, Joe, Miles Hall, Sr., continued to claim and exercise acts of ownership over the land. This fact, considered in connection with the further fact that he subsequently sold the land to Joe, shows very clearly that he never made any parol gift to Dog, or recognized the latter's claim of title while they jointly occupied the land. In addition to these considerations, it appears that Dog Hall, during his lifetime, and his wife and children thereafter did not occupy the land with Miles Hall, Sr., for a longer period than eleven or twelve years, and when Miles, Sr., left the land, Joe Hall took possession thereof by tenants and that possession has continued practically all the time until the suit was tried. When he took possession, plaintiffs had knowledge of the fact that he did so under the deed from his father, and all the circumstances tend to show that the holding of plaintiffs from that time on was by Joe's permission and in no sense hostile or exclusive. We therefore conclude that plaintiffs failed to show title by adverse possession under a parol gift to their father, and that the chancellor did not err in so holding.

Judgment affirmed. Whole court sitting.