## Big Blaine Oil & Gas Company v. Yates.

(Decided November 12, 1918.)

### Appeal from Lawrence Circuit Court.

1. Adverse Possession—Title.—One in possession of land under a gift, though in parol, claiming it as his own and exercising exclusive acts of ownership over it is a holder of the title adversely to the owner without the necessity of notice, actual or constructive, to the owner of the character of such holding, and if the occupant or his transferee continues the possession for the statutory period the title will become perfected in the occupant by adverse possession.

2. Adverse Possession—When Wife May Hold Against Husband.— A deserted wife may, as transferee from an adverse holder or occupier of her husband's land, herself hold it adversely to her husband, and her title will become perfect if the character of her occupancy is such as to be adverse, and it, with that of her transferer, completes the statutory period.

3. Adverse Possession—When Wife Acquires 'Title.—A wife was abandoned by her husband who was unheard of for twelve years, the wife dying thirty-two years after the desertion without the husband ever returning or in any manner contributing to the support of the wife or any of the nine children. The oldest son moved upon and took possession of fifty acres of land held by his father under a title bond, claiming that his father gave him the land. The son finished paying for the land and occupied it adversely and as his own for five or six years and transferred the possession to the mother, who held it in the same manner until her death. Held, that the husband was deprived of his title by adverse possession and the devisee of the wife acquired a good title.

M. S. BURNS and W. D. O'NEAL for appellant.

FRED M. VINSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The question involved in this appeal is the ownership of the oil and gas rights in and to 50 acres of land situated in Lawrence county, Kentucky. Both the appellant, who was defendant below, and the appellee, who was plaintiff below, are claiming to own such rights, the former under a lease executed by Charley Bernard to one Tom Hayes on the 8th of October, 1913, and assigned to defendant, and the plaintiff is insisting that he is the exclusive owner of the same rights under a lease executed to him by Ira Bernard on October 17, 1913, supplemented by another executed by the same party on September 23, 1914.

The suit was brought by plaintiff against the defendant to quiet the former's title to such privileges, and to cancel the lease under which the defendant claimed to be the owner thereof. The circuit court sustained the prayer of the petition and cancelled defendant's lease, and complaining of that judgment it prosecutes this appeal.

In addition to contending that its remote lessor, Charley Bernard, was the legal titleholder to the 50 acres of land, the defendant also interposed a plea of champerty, both of which were denied by the circuit court, but each of them is insisted upon on this appeal. The contentions of plaintiff are that his lessor, Ira Bernard, was the owner of the 50 acres at the time plaintiff's lease was acquired, and that Charley Bernard had no interest whatever in the leased land, nor did defendant have such possession as to make plaintiff's purchase champertous. Manifestly if Charley Bernard, the remote lessor of defendant, was the owner of the land at the time he executed the lease under which the defendant claims, then plaintiff acquired no interest under the lease which he obtained from Ira Bernard, and if the evidence authorizes such a finding there will be no necessity for considering the plea of champerty.

The facts with reference to the title of the 50 acres in question are substantially these: In 1880 Ira Bernard and his wife, Mary Bernard, with their family of nine children, the oldest of whom, Jesse Bernard, being about 21 years of age, resided upon a tract of land containing 100 acres in Lawrence county, the title to which was held by Ira Bernard, and upon which there was a lien for some amount not shown by the record. This tract was bounded on one side by a public road, and on January 19 of

that year Ira Bernard purchased by title bond only from S. C. Duvall 50 acres of land just across the public road for the consideration of $311.75, only $88.00 of which was paid at the time. Almost immediately after the purchase of the 50 acres and the execution of the title bond by Duvall, Ira Bernard mysteriously disappeared from that vicinity, leaving his wife with the large family of children to struggle for existence. He was not heard from for more than twelve years, and shortly after his departure suit was brought to enforce the lien on the 100-acre homestead. It was adjudged to be sold and the oldest child, Jesse Bernard, bid it in at the decretal sale, receiving a deed therefor from the commissioner who sold it. Later, Jesse Bernard deeded to his mother 49 acres of the 100 acres lying next to the public road and adjoining the 50 acres in question.

A short while after the husband's departure Jesse Bernard married and moved upon and took possession of the 50 acres of land, claiming it as his own, contending that his father intended to and did give him that tract, and that he had purchased it from Duvall for that purpose. He occupied that tract for more than two years, but after purchasing the 100 acres he moved upon the remaining 51 acres of it, after giving to his mother the 49 acres, but continued to occupy the 50 acres with tenants for some three or four years longer. He then gave, or, to use his own language, "turned over" the fifty acres to his mother, who took possession of it and continued to occupy, use and claim it until her death in 1912, cultivating portions of it and renting other portions. She executed her will by which she devised the 50 acres to her youngest son, Charley, who had lived with her from the time of her husband's departure, and it is the title which Charley obtained under his mother's will which plaintiff insists is worthless, while defendant contends it is perfect, since his mother, at the time of the execution of her will, and at the time of her death, had acquired a perfect title by adverse possession.

The evidence discloses that when Ira Bernard deserted his wife and large family of children he located at Cloverport, in Breckinridge county, and that it was by mere accident that his wife, twelve years later, learned that he was still alive, and of the place of his residence. He, however, after that time continued to reside at Cloverport, and never visited his wife or family, nor did

he appear in that community until 1914, two years after
his wife's death, and more than thirty-four years after
his unexplained and inexcusable departure. Even when
he did appear it was not for the purpose of visiting any
of his children, or through any parental or sentimental
motives, but it was for the purpose of asserting his right
not only to the 50 acres of land involved, but also to the
100 acres which had been sold, as stated, under the judg-
ment of the court. It is doubtful whether even such mer-
cenary motives would have been sufficient to induce him
to return to the scene of his old home if land in that vicin-
ity had remained in the condition and of substantially the
same value that it was when he disappeared. But the
oil boom in eastern Kentucky had found its way to Law-
rence county, and paying wells had been drilled in the
vicinity of the Bernard lands, which greatly enhanced
the value of the latter, and the alluring prospects of shar-
ing this sudden advancement seems to have been the
principal inducement for the husband's belated return.

It is insisted by plaintiff's counsel that the posses-
sion of the 50 acres by the wife, Mary Bernard, after the
departure of her husband, was amicable to his title, since
it was acquired by virtue of the relationship, and that the
proven acts of ownership exercised by the wife after that
time were not sufficient under the law to convert her own-
ership, amicable at the beginning, into a hostile or ad-
verse one as against her husband. It is furthermore in-
sisted by plaintiff that if the wife's holding had been suf-
ficient to make it adverse to her husband, she could not
acquire a title in that manner because it is incompetent,
as claimed, for either spouse to acquire such a title as
against the other. Whatever may be the true solution
of plaintiff's contentions, we are convinced that under
the facts disclosed by the record it is not necessary to de-
termine them.

It will already have been observed that upon the de-
parture of Ira Bernard from his family in 1880, his old-
est son, Jesse, took charge of the 50 acres of land under a
claim of right, insisting that it was purchased for; and as
a gift from, his father to him. He afterwards exercised
exclusive and notorious acts of ownership concerning
it, and claimed it as his own. He furthermore testified
that he paid all of the deferred payments to Duvall, the
vendor, and the title bond in the record shows that the
only deferred payment credited on it was paid by Jesse

Bernard. It is true that Ira Bernard, the father, testified that he did not give the 50 acres to any one, and that he paid for all of it, but we are convinced from the many contradictions of him found in this record, as well as his course of conduct as pictured therein, that his testimony is not credible. Indeed it would be strange if he had made any of the deferred payments, as he claims, that neither any member of his family nor any of the people of that vicinity knew anything of his whereabouts for the space of twelve years, and the fact was not then divulged because of any payment which he made on the land. The acts and conduct of all parties thoroughly convince us that Jesse Bernard's testimony is to be accepted as true, rather than that of his father. Certain it is that a court of equity, under the facts disclosed by this record, would lend a more willing ear to the testimony looking to the establishment of the title of the deserted wife than to that which would take the title away from her and establish it in the husband. We therefore conclude that the possession of Jesse Bernard up to the time he gave or "turned over" the 50 acres to his mother was adverse to the title held by his father. The mother, as we have seen, paid the taxes on and otherwise exercised acts of ownership over the 50 acres until her death, during which time she executed two leases for the privilege of mining coal under the tract, and finally disposed of it by her last will and testament. We find nothing in the record to prove that she in any wise recognized any claim to the land as resting in her husband. True, when she executed the coal leases she is alleged to have made the statement that she did not know whether she had the right to do so, but such a statement, if made, is not a recognition of any claim of the husband—at any rate not necessarily so—but rather that she was under the impression that perhaps her children held the fee simple title thereto. However that may be, she did execute the leases as though she were the owner of the fee, and held the land more than fifteen years thereafter.

That a married woman may acquire a title by adverse possession there can be no doubt. In 1 Cyc., 1122, the text says: "Where a married woman, in her own right, takes and holds possession of land adversely to the owner for the statutory period, she acquires title by adverse possession which can not be affected by the acts of her husband."

In 1 R. C. L., page 755, the law upon the subject is thus stated: "It is well settled that title by adverse possession may be acquired by a married woman." The possession of the wife, which it is claimed by the defendant to have been adverse, and which we have found to have been so, was not that growing out of, or founded upon, her relationship to her husband, since it was not acquired by virtue of her being his wife. The possession which she had of the 50 acres, as we have determined from the record, is one obtained from her son, Jesse, and under the authorities referred to there is nothing to prevent the tacking of her possession to that first held by her son so as to make their combined and continuous holding bar the husband's right.

In support of the judgment below we are referred to the cases from this court of Tippenhauer v. Tippenhauer, 158 Ky. 639; Chambers v. Pleak, 6 Dana 426, 32 Am. Dec. 78; Morton v. Lawson, 1 B. Monroe 45; Frazier, et al. v. Morris, 161 Ky. 72; Padgett v. Decker, 145 Ky. 227; Murphy v. Newingham, 151 Ky. 360; Snyder v. Vinson, 167 Ky. 332; Cryer v. McGuire, 148 Ky. 100, and Wolford v. Smith, 146 Ky. 341, wherein it is substantially held that an amicable entry not under an expressed unconditional gift or purchase, although accompanied by peaceable possession, will not ripen into a title in the occupier until and after the real owner has received notice (actual or constructive) and thus become warned of the adverse nature of the holding and its hostile character for the requisite time.

The principle of law announced by those cases is correct and receives our continued approval, but we do not find the facts in this record sufficient to authorize its application. On the contrary, we find the entry of Jesse Bernard to have been unfriendly to any supposed title held by his father, and it was made under a gift of the land, as we find from the evidence, and when possession is thus taken the authorities are abundant that the subsequent possession, if held under a claim of right, will be adverse to the holder of the title. Tippenhauer v. Tippenhauer, *supra;* Commonwealth v. Gibson, 85 Ky. 666; Thomson v. Thomson, 93 Ky. 435; Murphy v. Newingham, 151 Ky. 360, and New Domain Oil Gas Co. v. Gaffney Oil Co., 134 Ky. 792. Since the possession of the first occupier in this case was not

amicable, the question of notice to the titleholder of the character of his holding does not arise.

We therefore conclude from a consideration of the entire case that Mrs. Mary Bernard, at the time she executed her will, had acquired title to the 50 acres in question by adverse possession, and that Charley Bernard, the defendant's remote lessor, acquired title to that tract under his mother's will, and his lease to Hayes, defendant's assignor, transferred the right to mine the oil and gas under that tract, and as a consequence the leases executed by Ira Bernard to the plaintiff were each of them invalid and of no effect, since he had nothing to convey.

It results that the petition should have been dismissed and the judgment is reversed, with directions to enter that order.