## Riley v. City of Lexington, et al.

(Decided May 7, 1920.)

### Appeal from Fayette Circuit Court.

1. Dower—Occupancy Without Assignment of Dower.—The occupancy of a widow without assignment of dower will be deemed as friendly to the title of her husband's heirs unless it be openly and notoriously declared by her as adverse to their title by plain, decisive and unequivocal acts on her part amounting to an open denial of their rights and putting them out of possession.

2. Dower—Occupancy of Widow.—Where it was agreed by stipulation that the widow claimed the land as her own "and held it adversely, openly, notoriously, continuously and peaceably as against all the world" for a period of more than forty-five years, it will be deemed that her occupancy was of that character which the law recognizes as adverse to the title of the heirs.

RIVES & SHANNON for appellant.

JAMES A. WILMORE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In·the equity case of the City of Lexington v. Minnie Weiman, pending in the Fayette circuit court, a judgment was rendered ordering the sale of a lot situated in the city, upon which it was adjudged that the plaintiff in that suit had a lien for unpaid taxes for the five years preceding the filing of the suit. After advertisement as directed by the judgment, the master commissioner sold the lot at the court house door, when appellant, John J. Riley, became the purchaser. The sale was reported by the commissioner, but before it was confirmed the appellant filed exceptions thereto in which he claimed (1) that the defendant, Minnie Weiman, had no title to the lot sold and that he obtained nothing by his purchase, and (2) that the unknown heirs of John H. McLaughlin, through whom defendant claimed title, should have been made parties to the suit.

Upon the trial of the exceptions it was agreed by written stipulation of the parties in substance that John H. McLaughlin purchased the lot on September 12, 1842, from John Barbee; that John H. McLaughlin was born on December 25, 1814, in the state of Pennsylvania; that his father and mother died when he was very young and he was reared in an orphans' home, and had no brothers or sisters; that some time before the purchase of the lot he moved to Lexington; that he always claimed that he had no living relatives; that some time prior to his death he married Miss Eliza Neale, who survived him, and who continued to occupy the lot as her home until her death in 1900; that the parties had no children, and the widow, Eliza McLaughlin, died testate, and by her will, which was probated August 23, 1900, she devised the property to Minnie Weiman, the defendant in the ·suit, who has continued to occupy it adversely since that time. The stipulation then says:

"And that at his (John H. McLaughlin's) death she (his widow) took over the property which her husband owned at the time of his death, paid taxes on it and claimed it as her own and held it adversely, openly, notoriously, continuously and peacefully as against all the world, up until the time of her death, a period of some forty-five years, and during all that time occupied (it) as her home."

Upon the facts so agreed to the court overruled the exceptions and confirmed the sale, and complaining of that judgment this appeal is prosecuted.

It is insisted on behalf of appellant that the occupancy of Mrs. McLaughlin after her husband's death was that of a widow without the assignment of dower, and that in law such occupancy is friendly to the heirs of her husband and it will not ripen into title by adverse possession in favor of the occupant whatever its length. And, further insist, that the acknowledged adverse occupancy by the defendant, Minnie Weiman, since the widow's death, although for a period of nineteen years, can not be taken as perfecting her title, because there may have been infant heirs of John H. McLaughlin at the beginning of defendant's occupancy against whom limitations did not run until after they arrived at the age of twenty-one years, and for the reasons stated it is insisted that the judgment is erroneous and should be reversed.

There is no doubt of the correctness of the legal proposition that the occupancy by a widow of the lands of her deceased husband will be presumed to be consistent with, and amicable to, the title of the husband's heirs, and nothing else appearing except such occupancy, her possession will not be adverse as against them. 2 Corpus Juris, pages 158-159; Driskell v. Hanks, 18 B. Mon., star page 855; Frazer v. Naylor, 1 Met. 593; Clayton v. Clayton, 11 Ky. Law Rep. 472; Moore v. Gulley, 30 Ky. Law Rep. 442; Bush v. Fitzgeralds, 125 S. W. Rep. (Ky.) 716; Griffith v. Griffith, 152 Ky. 185, and Big Blaine Oil & Gas Co. v. Yates, 182 Ky. 45.

The rule is applicable with especial force where there has been no assignment of dower, but even in that case the law does not regard it as impossible for the widow's occupancy to become adverse so as to start the statute of limitations against the true holder of the title. See authorities, *supra,* and Reno v. Blackburn, 25 Ky. Law Rep. 1976, and Yeatman v. McDonald, 4 Ky. Law Rep. 348, 11 Ky. Opinions 748. Thus, in Corpus Juris, *supra,* it is laid down in the text that:

"Nevertheless according to the weight of authority the possession of the widow, although not in hostility to the heirs, may be converted into an adverse holding which will ripen into title if continued for the statutory period.

But for this purpose it is essential that there should be some plain, decisive, unequivocal act or conduct on the part of the widow amounting to an open denial of the rights of the heirs and putting them out of possession.".

In the case of Griffith v. Griffith, *supra,* this court, after acknowledging the general rule that the occupancy by the widow without assignment of dower was not adverse to the husband's heirs, added, "unless it be openly and notoriously declared by her to be held adversely to the title of the heirs." In the Frazer case the same qualification is acknowledged in this language: "Unless an open and notorious adverse holding be established by proof, and, as already stated, no such proof is found in this record." The same qualification is stated in the Driskell and other cases referred to.

The rule, then, being that it is competent under some circumstances for the widow, although dower has not been assigned, to become an adverse occupant, the question is—what effect shall be given to the stipulation that the widow McLaughlin in this case held the land "adversely, openly, notoriously, continuously and peaceably as against all the world, up until the time of her death; a period of more than forty-five years," and during all that time claimed it as her own? Not only do we find in that agreement the descriptive word "adversely," but the agreed facts show all of the elements of a legal, adverse holding. We must presume that the parties in their agreement used language descriptive of and applicable to the facts of the particular case about which they were speaking, and when it was agreed that the occupancy of the widow was adverse, it was meant to say that it was adverse in contemplation of law; i. e., that the widow in this case occupied the land after the death of her husband in such a manner and accompanied by such acts and conduct on her part as the law deemed adequate to render her possession hostile to the title of her husband's heirs, which if true, it would ripen into a title after the lapse of fifteen years.

It is not necessary to here determine the character of acts or the particular conduct which would convert the presumed friendly occupancy by the widow into a hostile one, for whatever they be, the stipulation filed agreed that they were of the requisite character. Since her occupancy was for a period of about fifty-eight years, we conclude that the court properly held that her

title was perfect, and that her devisee, Minnie Weiman, obtained a like one.

This conclusion renders it unnecessary for us to consider the question raised concerning the effect of the adverse holding of the defendant, Minnie Weiman, for the period of nineteen years since Mrs. McLaughlin's death.

It follows, therefore, that the judgment was proper, and it is affirmed.