## Malinda Patton v. James Patton, John Patton and Malissee Patton.

(Decided December 15, 1922.)

### Appeal from Allen Circuit Court.

1. Wills—Devise—Condition Precedent.—A devise of land to two sons on condition that they support and take care of their mother so long as she lives and their three unmarried sisters so long as they remain single, is not defeated if one of the sons takes charge of the lands and performs the conditions of the devise.

2. Wills—Condition Precedent.—Although one devisee may perform all of the conditions precedent this will inure to the benefit of both devisees in the absence of a showing that the non-performing devisee had relinquished his rights under the devise, for it will be presumed that the execution of the conditions precedent by one of them was at the instance and for the benefit of both devisees.

3. Wills—Estoppel.—Where one of the devisees takes charge of lands devised to him and his brother and holds and uses the same for his benefit, he is estopped to say he was not holding the land for himself and joint devisee.

OLIVER & DIXON for appellant.

HARPER & DENTON for appellees.

In the year 1889 James S. Patton made and executed his last will and testament, which contained the following and other provisions:

"It is my will that after my death my two sons, Robt. R. Patton and Quinton A. Patton, are to have my tract of land upon which I now live containing 170 acres with the express condition and understanding that said land is to be the permanent home of my wife Malinda Patton during her natural life, and also the permanent home of my three daughters, Sarah E. Patton, Lettie E. Patton and Malissee E. Patton, as long as they remain single and that my two said sons are to support my said wife Malinda Patton in a decent and humane manner during her natural life and also to support each of my said three daughters in a like manner as long as they remain single.

"3rd.  It is my will and request that if either of my two sons Robert R. or Quinton A. Patton should die before the death of my wife Malinda Patton, then and in that event the survivor shall be required to do and perform all that is required of them both and inherit the same as is set out in the 2nd class of this my last will and testament.

"4th.  It is my will and desire that if my two sons fail to perform the requirements of this my will as is expressed in the 2nd and 3rd class of this will, then I will and desire that at the death of my wife Matilda Patton, my land as set out in the 2nd class be sold and the proceeds thereof equally divided between my five children, viz.: Robert R., Sarah E., Lettie E., Quinton and Malissee E. Patton."

In 1880 the testator died survived by his widow Malinda and two sons, Robert and Quinton, and three daughters, Sarah E., Lettie E., and Malissee E.  There was a small amount of personal property, including household and kitchen furniture, some livestock on the farm and some farming machinery owned by testator at the time of his death.  The farm on which he lived contained only 170 acres of moderately fertile land. Through a good number of years he had managed to make a living on the farm for his family and himself. His two sons, Robert and Quinton, were young men just in their twenties.  Robert was then working in a store at Scottsville making his own way.  Quinton was at home working on the farm.  Neither of the boys was married

nor was either of the girls married at that time, but some years later Sarah married a Mr. Johnson and went to live at his home; later, when she became afflicted, she returned home and Mr. Johnson came with her. The widow, Malinda, died intestate about four years after the death of her husband. During her lifetime she had lived at the old homestead and was provided with the necessities and some of the comforts of life by the labor of all of the children. In 1891 Robert died intestate survived by a wife and daughter, Malinda, who is now plaintiff in this case, and in 1896 Quinton died intestate, survived by two sons, James and John, who are now defendants in this action. Only one of the daughters of the testator survived at the time of the bringing of this action. The situation therefore was this: James and John, sons of Quinton, and grandsons of the testator, were in the actual possession of the tract of 170 acres of land. Their grandmother had passed away some years before and two of their aunts had gone to the great beyond; but they had with them one of their aunts, a maiden lady of considerable years. The plaintiff, now appellant, Malinda Patton, had never lived in the home which is the center of this controversy but had lived in the neighborhood with her mother, Mrs. Robert Patton.

This suit was brought by appellant Malinda Patton, praying a construction of the will of James S. Patton executed August 13, 1879, and for a judgment declaring that under the terms and provisions of the will she was entitled to be declared the owner of a one-half undivided interest in the land devised by said will to her father, Robert R. Patton, and his brother, Quinton A. Patton, subject to the rights of the defendant Malissee E. Patton to use and keep it as a homestead during her unmarried life, and that appellant be adjudged entitled to one-half of the proceeds received from the timber marketed and sold from said land, and one-half of the proceeds of the money realized from the oil and gas lease upon said land and for her interest in all the proceeds and income from the products of said farm. But if this could not be granted, then appellant prayed she be declared to be the owner of a one-half undivided interest in said land in accordance with the fourth provision of said will, and that she be entitled to one-third interest in the proceeds of the timber, oil and mineral rights, etc., and finally she prayed that her rights and interests in equity be adjudicated and for all orders and decrees necessary to properly pro-

tect her interest, including her costs and a reasonable attorney fee.

The answer denied practically all the averments of the petition, especially the averments setting up appellant's title to an interest in the land, and denied that the tract was worth eight to ten thousand dollars as alleged in the petition. In the answer it is affirmatively alleged that Quinton A. Patton provided for and supported Malinda E. Patton during her lifetime and properly provided for and supported Sarah, Lettie and Malissee Patton so long as they remained single and up until the death of Quinton Patton, and that since the death of Quinton the appellees, James and John Patton, have assumed the trust imposed under said will, and are carefully and properly providing for their co-defendant, Malissee Patton, the only sister now living upon the land, and that appellees have fully and completely performed the trust imposed under the will of James S. Patton, deceased. They further allege that Robert Patton at no time or in any manner whatever made any effort to support his mother Malinda Patton during her lifetime, or either of his sisters during their single and unmarried life, and that Robert has at all times ignored the trust imposed upon him and has failed and refused to make any effort to support or provide for either the widow or his sisters; and that while Malinda, Sarah, Lettie and Malissee lived to be old ladies and required considerable attention and were for many years sick and confined to bed, Quinton provided the support and attention which they desired and needed up to the time of his death, and after that time his two sons, James and John Patton, performed the same services.

The answer also has a plea of limitation wherein it is alleged that more than fifteen years have elapsed since the death of Malinda E. Patton, the life tenant under the will of James Patton, and during all this time that Quinton and his only heirs, John and James, have actually claimed the ownership of the 170 acres of land and have been in the peaceable and adverse possession of same all this time, claiming it openly and against the world for more than fifteen years. Issue being joined the parties took quite a volume of evidence. The case being submitted the trial court entered a judgment dismissing the petition of Malinda Patton, declaring her entitled to no part of the land which passed under the will of James S. Patton, and further adjudging that the

appellees, James and John Patton, are the absolute owners of the land described in the petition and adjudging that Malinda Patton pay the cost of this action. From this judgment she appeals.

At the death of testator, James S. Patton, in 1880, the land devised to Robert and Quinton Patton vested in them subject to the life estate of the widow and the unmarried daughters of the testatrix. Robert and Quinton took a vested remainder in the land; a present interest in the sons and both Robert and Quinton had a right to move on and take possession of the land not only for their own use but to support, maintain and care for their mother and their sisters, immediately upon the death of testator. At that time Robert was engaged as a clerk in a store in Scottsville and did not want to come back to the farm. Quinton lived at the homestead with the family and he liked that kind of work, so he decided to remain there and perform the terms and conditions of the will by taking care of his mother and three sisters. There is some evidence tending to show that the use of the farm fully paid Quinton for this. Just what help Robert Patton gave to his mother and sisters is not clearly shown. It is shown, however, that Quinton was an industrious, active young man who loved and respected his mother and sisters and made a splendid effort to support and maintain them in the way and manner which his father had directed in his last will. It is insisted, however, that Robert abandoned his interest in the land by remaining away from it and by declarations that he intended for Quinton to have the property. There were remedies open to Quinton at or after he took possession of the home place by which he could have required Robert to have aided him in the maintenance of their mother and sisters, if the farm was not sufficient for that purpose, if invoked by Quinton, and having failed to ask such relief it must be presumed that Quinton, who received the full benefit of the farm, was satisfied to carry out the provisions of the second paragraph of the will unaided by Robert. If he had not been content with the arrangement, why did he not compel Robert by legal proceedings to either come in and help or relinquish his claim to the said land under the will? There is no word of evidence tending to prove that the brothers were not on the very best of terms. It was also in evidence that Robert and family frequently visited his mother and his sisters at the old home place; especially would he visit

the old home when any member of the family became sick and at such times he would wait on them and take care of them and help them. His wife did a like service at the old homestead. There is no evidence whatever that Quinton ever claimed the lands as his own against his brother Robert, but at all times seemed to appreciate the fact that his brother had an interest in the land. Nevertheless a witness or two were called to prove that he on some occasions twenty or thirty years back, in speaking of the place would say, "my place," or say "I am going to do so and so on my place," meaning the old home place where he lived. This kind of evidence, however, is not of a very convincing nature, because it frequently happens that a tenant speaks of the land on which he lives as "my place," "my land," or "my crop."

Some short time before the commencement of this action John and James Patton, grandsons of the testator, conceived the idea that they were the only and true title holders to the tract of land and they attempted to execute to an oil company an oil and gas lease for which it is said they received a bonus of $2,000.00. It is also shown that Quinton used all the personal property, including the livestock, in the operation of the farm, and produced quite good crops on the farm and in the garden, as well as poultry, butter and milk. These last named articles were sold in the market for the purpose of raising ready cash. Robert received no benefit whatever from the farm through all these years, and as Robert and Quinton, brothers in blood, respect and love, were the only legal title holders and neither gave to the other any notice of his intention or purpose, either directly or indirectly, to hold the land or any part of it adversely to his co-tenant, the statutes of limitation were never set running, and had Quinton's posterity continued to hold the land under such circumstances for an indefinite period, the title would not have passed from the heirs of Robert. May v. C. & O. Ry. Co., 184 Ky. 493; Frazier, et al. v. Morris, 161 Ky. 72; Tippenhauer v. Tippenhauer, 158 Ky. 639; Padgett v. Decker, 145 Ky. 227; Big Blaine Oil & Gas Company v. Yates, 182 Ky. 50. Under such circumstances the possession of one co-tenant is the possession of all, and it is to be presumed that a co-tenant in possession is holding the estate for the use and benefit of all his co-tenants. May v. C. & O. Ry. Co., supra; 7 R. C. L. 820; 1 Cyc. 1146.

Appellees insist it would be unfair and inequitable to allow appellant to come in and take part of this land on which they have lived so long and made support for themselves and their forebears; but when one looks at the other side of the question it does not look so badly. Quinton had no farm or home of his own, and no doubt was glad to continue to make his home on the farm with his dear old mother and sisters. In a few years after the death of his mother he married and brought his wife to the old home place and there they raised a family. One of the daughters married and brought her husband to the homestead to help support the family, and it is shown in evidence that he did so. Tenants were on the place to help raise crops to feed the family. It therefore appears that Quinton was getting full benefit of the farm for himself and his own little family while he was helping to support his mother and sisters. Robert got nothing, but as he was away from the old home place and likely used expressions indicating he intended for Quinton to have the use and benefit of the farm without rent to him so long as he continued to take care of the mother and daughters, it seems equitable and right that appellees, James and John, be charged with no rents upon the place up to the time of the bringing of this action. In no event is the appellant entitled to take possession of the land, or any part of it so long as the aunt continues to live on the place, for she has a life estate therein which is superior to the present rights of the heirs of Robert and Quinton Patton.

While it is charged in the petition that the appellees cut and sold a large amount of timber some years before the bringing of this action, we think from the evidence that this item was small compared with the good which Quinton did in helping his mother and sisters, and for that reason we shall disregard this claim of appellant. But with respect to the oil lease made by appellees to the oil company whereby it is charged they received $2,000.00 as a bonus, we are inclined to the opinion that the appellant is entitled to one-half of the amount actually realized. She is likewise entitled to take the place of her father, Robert Patton, under the will and to have set apart to her at the death of her aunt, who now lives at the old homestead, a one-half interest in the land, quantity and quality considered.

As there are several small items upon which the chancellor may need to hear evidence before final decree is

entered, the judgment is reversed with directions to find and fix the equities between the parties in accordance with this opinion.

Judgment reversed.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.